BENJAMIN G. HUMPHREYS, APPELLANT, v. LEGGETT, SMITH, AND LAWRENCE.

The laws of Mississippi limit the liability of the sureties in the official bond of a sheriff to the amount of the penalty.

Where the surety had been compelled to pay the whole amount of his bond before a third party recovered judgment, the surety ought to have been relieved against an execution by this third party.

Not having been allowed to plead *puis darrein continuance*, and protect himself in this way by showing that he had paid the full amount of his bond, the surety ought to have been relieved in equity where he had filed a bill for relief.

THIS was an appeal from the Circuit Court of the United States for the Southern District of Mississippi. It arose from a former case in this court, McNutt v. Bland et al., reported in 2 Howard, 9.

The facts were these.

On the 6th of November, 1837, Richard J. Bland was elected sheriff of the County of Claiborne, in the State of Mississippi, for the term of two years, prescribed in the constitution of that State.

On the 10th of November, 1837, Richard J. Bland, Benjamin G. Humphreys, and John Grissom, all of that county and State, executed a penal bond, in the sum of $15,000, to Charles Lynch, Governor of the State, conditioned for the faithful execution by Bland of the duties of his office.

On the 30th of December, 1837, a writ of *capias ad satisfaciendum* was issued, at the suit of Leggett, Smith, and Lawrence, on a judgment obtained by them, as they allege, in the Circuit Court of the United States for Mississippi, against George W. McNider, for $3,910.78, on the 17th of November, 1837; and the said writ was placed in the hands of the Marshal of the United States for Mississippi, who took McNider into custody by virtue thereof, and delivered him for safe-keeping to Bland, as the sheriff of Claiborne County.

On the 12th of December, 1838, an execution was issued, at the suit of the Planters' Bank of Mississippi, on a judgment obtained by the bank in the Circuit Court of Mississippi for Claiborne County, against Hoopes, Moore, and Carpenter, for

$ 10,524.44, on the 4th of December, 1838, and the said execution was placed in the hands of Bland, as the sheriff of Claiborne County.

On the 21st of January, 1839, an execution was issued, at the suit of the Planters' Bank of Mississippi, on a judgment obtained by the bank in the Circuit Court of Mississippi for Claiborne County, against Campbell, Pierson, and Moore, for $ 3,718.78 on the 29th of November, 1836, and the said execution was placed in the hands of Bland, as the sheriff of Claiborne County.

On the 28th of March, 1839, a suit was instituted and declaration filed in the Circuit Court of the United States for Mississippi, in the name of Alexander G. McNutt, Governor of the State of Mississippi, to the use of Leggett, Smith, and Lawrence, against Bland, Humphreys, and Grissom, to recover damages for an alleged breach by Bland of his official bond, in setting McNider at liberty without lawful authority, while their judgment was in full force against him and unsatisfied.

On the same day a summons, in that suit, was issued against Bland, Humphreys, and Grissom, to which the marshal made return, — "Executed on R. J. Bland, personally, on the 5th April, 1839"; no return being made as to Humphreys and Grissom.

On the 20th of June, 1839, an alias summons, in the same suit, was issued against the same persons, with directions to be executed on Humphreys and Grissom only, to which the marshal made return, — "Executed this writ on B. G. Humphreys, personally, on the 14th day of October, 1839; J. Grissom not found in my district. [Signed] W. M. Gwin, Marshal, per John Hunter, D. M."

At November term, 1839, a plea was filed in the names of the defendants, Bland and Humphreys, in the same suit, denying the plaintiff's right of action, because Leggett, Smith, and Lawrence had failed to comply, in their proceedings against McNider, with the act of Mississippi, which required them to pay or give security for jail fees, and to appoint an agent in the county of Claiborne to receive notice of matters touching the execution, in default of which the prisoner was to be discharged; and further, because, after his commitment, he was regularly discharged therefrom, by a warrant from the judge of probate, under the insolvent laws of the State of Mississippi.

At the same term a replication was filed by Leggett, Smith, and Lawrence, alleging that they had an agent in the County of Warren; that no application was made to them for jail fees, or security therefor; that no notice was given to them of any

intention or application to discharge McNider; and, further, that McNider, being in custody under process from the Circuit Court of the United States, was not legally discharged.

At the same term a demurrer to this replication was filed, in the names of the defendants.

On the 26th of November, 1839, a discontinuance was ordered, as to the defendant Grissom; the demurrer on behalf of the other defendants was sustained; and judgment was entered in their favor, with costs.

On the 28th of November, 1839, a writ of error to the Supreme Court of the United States was issued by the clerk of the Circuit Court of Mississippi, at the suit of Leggett, Smith, and Lawrence.

On the same day a citation, addressed to "Richard Bland and Benjamin G. Humphreys, or Messrs. Winchester, Black, & Chaplain, Attorneys of Record," was issued, signed by "S. J. Gholson," one of the judges of the Circuit Court.

On the 20th of May, 1840, a motion was made in the Circuit Court of Claiborne County, Mississippi, on behalf of the Planters' Bank of Mississippi, for a judgment against Bland, as sheriff, and Humphreys and Grissom, as his securities, on the allegation that Bland had failed to return the execution issued at the suit of the bank against Hoopes, Moore, and Carpenter, and the judgment was granted for the sum of $11,775, with $526.22 damages.

On the 25th of May, 1840, a similar motion was made in the same court, on behalf of the same bank, against the same defendants, on the allegation that Bland had failed to return the execution issued at the suit of the bank against Campbell, Pierson, and Moore, and the judgment was granted against Bland and Humphreys for $2,674.75, "the balance," it was stated, "of the said official bond" of Bland.

On the 16th of July, 1840, writs of *fieri facias*, under each of these judgments, were delivered to the coroner against Bland and Humphreys; that in the first case being indorsed, "No security of any kind is to be taken." Under these writs, the estate, real and personal, of Humphreys was levied upon and sold; and the sum of $15,160.39, the proceeds thereof, was paid over by the coroner to the Planters' Bank.

On the 11th of December, 1840, the record in the case of McNutt to the use of Leggett, Smith, and Lawrence, against Bland and Humphreys, was brought into the Supreme Court of the United States, from the Circuit Court of the United States for Mississippi (January term, 1841, No. 43). It consists only of the record of the Circuit Court in the case of Leg-

gett, Smith, and Lawrence v. Bland and Humphreys, together with the writ of error and citation. The citation is indorsed, "Service on the defendants, accepted, Nov. 28, 1839. Geo. Winchester, for defendants."

The appearance is general, — for defendants, — "Walker."

Nothing appears to have been done at that term with the case.

At January term, 1842, the case was reached, and ordered to the foot of the docket.

At January term, 1843, on motion of Mr. Jones, for the plaintiff in error, the court granted leave to submit it on printed arguments.

At January term, 1844, the case was argued.

On the 30th of January, 1844, it was adjudged to be reversed, with costs, and remanded, with directions to enter judgment for the plaintiff.

On the 31st of January, 1844, Mr. Jones suggested the death of R. J. Bland, and moved that the writ of error stand against the survivor.

On the 12th of March, 1844, it was ordered that the mandate should direct judgment to be entered against the survivor. See 2 Howard, 28.

On the 1st of ——, 1844, a mandate was issued reciting the judgment; and also that, "whereas in the present term of January, 1844, the death of Richard J. Bland having been suggested, it was ordered by this court that this cause stand against Benjamin G. Humphreys alone, as the survivor"; on consideration thereof, it was "ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be, and the same is hereby, reversed, with costs, and that the said plaintiff recover against the said defendant, Benjamin G. Humphreys, $64.85, for his costs therein expended, and have execution therefor"; and it was further "ordered and adjudged that this cause be, and the same is hereby, remanded to the said Circuit Court, with directions to that court to enter judgment for the plaintiff, against Benjamin G. Humphreys alone, as the survivor."

On the 2d of November, 1844, the mandate of the Supreme Court having been filed in the Circuit Court of the United States in Mississippi, the defendant, Humphreys, asked leave to file a plea, puis darrein continuance, in which he set forth the judgments obtained against him in the Circuit Court of Claiborne County, on account of the failure of Bland to execute the writs in the cases of the Planters' Bank v. Hoopes, Moore, and Carpenter, and the Planters' Bank v. Campbell, Pierson, and Moore; and his own payment thereof, to the full amount

of his bond, as surety for Bland under executions issued by virtue of those judgments. The court, however, refused to admit the plea, on the ground that it was not competent for it to do any thing in that action but obey the mandate of the Supreme Court.

On the 17th of May, 1845, Humphreys filed a bill in equity, in the Circuit Court of the United States in Mississippi, against Leggett, Smith, and Lawrence, exhibiting the foregoing facts; and further averring, that, from the commencement of the suit in the Circuit Court by Leggett, Smith, and Lawrence, in the name of McNutt, as Governor of Mississippi, on the official bond of Bland, until the judgment of reversal by the Supreme Court of the United States, he had no notice or knowledge whatever thereof, or of the proceedings therein; that no process was ever served, or, to his knowledge, attempted to be served, on him; that although the deputy marshal makes return to the summons, that it was "executed on B. G. Humphreys, personally, on the 14th day of October, 1839," this is absolutely untrue; that he can prove that the return was so made, at the instance of Bland, who wished the fact of the suit to be kept a secret from him, Humphreys; and that he never employed counsel, and never authorized any person to enter an appearance for him. He, therefore, prayed for an injunction to restrain proceedings at law under the judgment; and, upon final hearing, that the injunction might be made perpetual.

On the 8th of July, 1845, Humphreys gave bond in the sum of $ 12,880.12, and the injunction issued.

On the 11th of November, 1845, Leggett, Smith, and Lawrence filed a general demurrer to the bill, as exhibiting no case for equitable relief.

On the 17th of November, 1846, judgment was given on the demurrer against the complainant, Humphreys, and a decree entered dismissing his bill.

On the same day, the appeal was prayed for, and allowed.

The cause was argued by *Mr. Gilpin*, for the appellant, and *Mr. Jones*, for the appellees.

*Mr. Gilpin*, for the appellant, contended that this decree was erroneous, and ought to be reversed.

It appears by the foregoing statement of the facts, that, on the 16th of July, 1840, Humphreys paid, under executions issued upon judgments obtained against him on this bond, the whole penalty thereof. If, therefore, the present appellees are not restrained from proceeding to execution against him, upon the judgment they have subsequently obtained on the same

bond, he will be compelled to pay the penalty thereof a second time.

The questions, therefore, to be considered, are, whether he was legally bound to pay under the executions issued against him on the 16th of July, 1840; whether, notwithstanding such payment, the appellees can compel him also to pay the amount of the judgment they have obtained; and whether he is entitled to the protection of a court of equity, against such compulsory payment, in the manner prayed for in his bill.

I. The appellant, Humphreys, was compelled by law to pay the whole amount of the penalty of his bond; it was done by the sale, under execution, of his property, real and personal, — even his household furniture; he could not delay the payment even by giving security. The law of Mississippi, under which his bond was given, and by the provisions of which law his liability as security of the sheriff is regulated, compelled the payment under the judgments obtained by the Planters' Bank of Mississippi, on the 20th and 25th of May, 1840, and the executions issued thereon, amounting to more than $15,000, the penalty of the bond.

"If any sheriff, under-sheriff, coroner, or other officer, shall collect, by virtue of an execution or executions, a part or the whole amount of money due by such execution or executions, such sheriff, under-sheriff, coroner, or other officer, shall, immediately after the collection of any such sum or sums of money, pay the same over to the plaintiff in the execution, or his attorney, provided that the plaintiff or his attorney shall demand the same; and on failure to pay the same at the time of demand made, such sheriff, under-sheriff, coroner, or other officer, his and their sureties, shall be liable to pay to the plaintiff in the execution the whole amount of money so collected, together with twenty-five per cent. damages thereon, with interest at the rate of eight per cent. per annum; to be recovered by motion before the court to which such execution is made returnable, after reasonable notice to such sheriff or other officer of such motion; and the clerk of the court before which such motion is made shall indorse on the execution issuing on the judgment against such sheriff, coroner, or other officer, and their securities, that 'no security of any kind shall be taken.' Provided always, that if any sheriff shall have more executions than one in his hands, and shall have failed to make a sufficiency of money to satisfy the whole amount of the several executions, and shall file an affidavit of the fact with the clerk of the Circuit Court of the proper county, such sheriff shall not be liable to the penalties hereby prescribed."

"All sheriffs shall be liable, in the manner above prescribed, for moneys collected by their deputies on executions, whether the same shall have come to the hands of the sheriff or not."

"If any sheriff, coroner, or other officer, shall fail to return any execution to him or them directed, on the return day thereof, the plaintiff in the execution may recover judgment against such sheriff, coroner, or other officer, and his and their sureties, for the amount of such executions, with five per cent. damages, by motion before the court to which execution is returnable, with eight per cent. interest on the same until paid; and the clerk shall indorse on the execution issuing on such judgment, that no security is to be taken. Provided that, after any sheriff, coroner, or other officer shall have paid the amount of money and damages received as aforesaid, then the original execution shall be vested in such sheriff, coroner, or other officer, for his or their benefit; and provided, also, that nothing in this section contained shall be so construed as to affect the remedy already existing against sheriffs, or other officers, for failing to return executions." Howard & Hutchinson's Miss. Digest, p. 296, § 25; Hutchinson's Miss. Code, p. 447, art. 7, § 1.

The facts stated, shown in the record, and admitted by the demurrer, bring within the stringent provisions of this law the liability of the appellant, as security of the sheriff.

On the 12th of December, 1838, and on the 21st of January, 1839, executions had come into the hands of the sheriff returnable to the next term of the court; at this time, no suit had been instituted by the appellees against the sheriff or his sureties, on their official bond, on the ground of the alleged escape of McNider; these executions not being returned, judgments were recovered against the appellant, on his official bond, on summary motion, and in exact accordance with the law; executions were thereon issued to the coroner against the appellant; it was therein ordered that "no security of any kind was to be taken"; no other executions were then in the coroner's hands against the appellant; under these executions, the entire penalty of the official bond was compulsorily made, by the sale of the property of the surety.

The first position, then, is established in law and in fact, that the appellant was legally obliged to pay, and did actually pay, under the writs delivered to the coroner on the 16th of July, 1840, the whole penalty of the bond, to recover which the present action was also brought by the appellees.

II. Are the appellees then entitled, under their judgment subsequently recovered against Humphreys, on the same bond, to issue an execution and levy its amount on his property?

They are not (even if their judgment in this action were a legal and perfect judgment, which it is not), because the penalty of the bond has already been paid, and the obligation of Humphreys is discharged ; because the Planters' Bank, being the first execution creditors, were entitled to be first paid ; and because it was the neglect of the appellees themselves, not to proceed in the same summary manner to recover their debt, as they were enabled to do by the law of Mississippi.

1. The law of Mississippi limits the liability of the surety to the amount of the penalty of his bond.

" The sheriff's bond shall not be void on the first recovery, but may be put in suit and prosecuted from time to time, at the costs and charges of any party injured, until the whole amount of the penalty thereof be recovered." Hutch. Miss. Code, p. 441, art. 3, § 1.

" In all actions which shall be brought upon any bond or bonds for the payment of money, wherein the plaintiff shall recover, judgment shall be entered for the penalty of such bond, to be discharged by the payment of the principal and the interest due thereon, and the costs of suit." Howard and Hutch. Dig. p. 614, § 3 ; Hutchinson's Miss. Code, p. 874, § 56.

And the same principle has been repeatedly affirmed by judicial decisions. McGill *v.* U. States Bank, 12 Wheaton, 511 ; Harris *v.* Clapp, 1 Mass. 308 ; State *v.* Wayman, 2 Gill & Johns. 279 ; Glidewell *v.* McGaughey, 2 Blackf. 361.

2. It was not possible for the appellant, Humphreys, to avoid the payment under the execution of the Planters' Bank ; no security or stay of any kind was allowed ; if the appellees, as plaintiffs and judgment creditors, had acquired rights, they were rights to be enforced against the fund made by the execution, or as a prior lien on the property levied on ; if their suit or judgment gave them priority, it could not prevent the levy and sale, under this execution, but must look for its enforcement to the property sold, the money made, or the officer who wrongfully appropriated it ; the obligation of the surety, Humphreys, was not the less discharged.

By the statutes of Mississippi, a judgment is a lien on all the defendant's property, personal as well as real, from the time it is entered. " In all cases, the property of the defendant shall be bound and liable to any judgment that may be entered up, from the time of entering such judgment." Howard & Hutch. Dig., p. 621, § 43 ; Hutchinson's Miss. Code, p. 881, § 12.

By repeated decisions, the execution creditor is entitled to the proceeds of the sale, the prior judgment creditor, who has not levied an execution, being left to his lien on the property.

Robinson *v.* Green, 6 How. Miss. 223; Commercial Bank *v.* Yazoo, Ibid. 535; Goode *v.* Mayson, Ibid. 547; Andrews *v.* Doe, Ibid. 562; Bibb *v.* Jones, 7 ib. 400.

3. The statute of Mississippi gave to the appellees the same summary mode of proceeding against the sheriff and his sureties on the escape of McNider, when in custody under their *ca. sa.*; if resorted to, notice would have been given to the surety, Humphreys, and his property would have been applied to their judgment; their neglect has been the cause of his property being applied, in his ignorance of any prior claim, to another debt.

"If any sheriff, under-sheriff, or other officer, shall make return upon any writ of *capias ad satisfaciendum*, or attachment for not performing a decree in chancery, for payment of any sum of money, that he hath taken the body or bodies of the defendant or defendants, and hath the same ready to satisfy the money in such writ mentioned, and shall have actually received such money of the defendant or defendants, or suffered him, her, or them to escape, with the consent of such sheriff, under-sheriff, or other officer, and shall not immediately pay such money to the party to whom the same is payable, or his attorney, or shall make any other return upon any such execution as will show that such sheriff, under-sheriff, or other officer, hath voluntarily, and without authority, omitted to levy the same, or as would entitle the plaintiff to recover from such sheriff, or other officer, by action of debt, the debt, damages, or costs in such execution mentioned, and such sheriff or other officer shall not immediately pay the same to the party to whom it is payable, or to his attorney, it shall and may be lawful, in either of the said cases, for the creditor at whose suit such *ca. sa.* or attachment shall issue, upon motion made before the court from which such writ issued, to demand judgment against such sheriff, under-sheriff, or other officer, and the sureties of either of them and their legal representatives jointly, for the money mentioned in such writ, with interest thereon at the rate of thirty per cent. per annum from the return day of the execution." How. & Hutch. Dig., p. 642, § 42; Hutchinson's Miss. Code, p. 905, § 49.

Viewed, therefore, in every light, the obligation of the appellee, Humphreys, under his official bond, has been discharged; it has been discharged involuntarily, by force of law; if the appellants lose a recourse to his personal security, they yet retain it, if their judgment be valid, against his property which was levied on; or, if they do not so retain it, their loss has arisen from their own failure to resort to remedies and

26 *

modes of proceeding which the statutes of Mississippi gave
them.

III. But if this were not so, — if the appellant, Humphreys,
would be liable to an execution on such a judgment, legally re-
covered against him as a surety on this bond, — still, in this
case, the appellees, as judgment creditors, are not entitled to it,
because the judgment they have entered against Humphreys, if
even it be not illegal in form and substance, was without any
notice to him, was obtained by fraud practised against him,
and is altogether such a proceeding as a court of equity will
protect an innocent party from the consequences of, if sought
to be carried into operation against him, by the forms of law.

1. So far as appears by the record, it is a general judgment
entered in the Circuit Court against Humphreys for the sum of
$ 6,355.33, founded on the mandate of the Supreme Court,
which merely reversed the previous judgment of the Circuit
Court rendered on demurrer, and in favor of the defendant.
All for which the appellees, being plaintiffs in that suit,
were entitled to judgment, was the amount of damages they
had sustained; and that amount should appear to be ascer-
tained in due course of law.   This the record nowhere ex-
hibits; it exhibits merely a *ca. sa.* against McNider, reciting a
judgment held by the appellees against him for $ 3,910.78.
That such a judgment cannot sustain an execution, is a propo-
sition too well settled to require argument or authority for its
support.   Besides, it is clearly established by the statutes of
Mississippi, under which the liability of the appellant, Hum-
phreys, accrues, and by the provisions of which its extent is to
be ascertained.

" If the plaintiff in any suit or action shall demur to the plea
of the defendant, and the demurrer be sustained on joinder and
argument, the judgment of the court shall be *respondeat ouster ;*
but in such case the defendant shall be compelled to plead to
the merits of the suit or action, and the plaintiff shall not there-
by be delayed of his trial."   Howard & Hutch. Dig., p. 616,
§ 8 ; Hutchinson's Miss. Code, p. 875, § 66.

" Every sheriff [failing to execute his duty] shall be liable to
the action of the party injured by such default for all damages
which he or they may have sustained thereby."   Howard &
Hutch. Dig., p. 292, § 7 ; Hutchinson's Miss. Code, p. 443, § 7.

" Where any sheriff or other officer shall have taken the body
of any debtor in execution, and shall wilfully and negligently
suffer such debtor to escape, the person suing out such execu-
tion, his executors or administrators, shall and may have and
maintain an action of debt against such sheriff or other officer,

his executors or administrators, for the recovery of all such sums of money as are mentioned in the said execution, and damages for detaining the same." How. & Hutch. Dig., p. 649, §. 61; Hutchinson's Miss. Code, p. 549, § 3.

2. But the judgment itself is totally invalid, as against the appellant, Humphreys. It was obtained without notice to him; without opportunity for defence; by a deliberate fraud practised towards him; and, if followed by execution, must involve him in great and irremediable loss.

The record shows, and the demurrer expressly admits, that, in the action which has resulted in this judgment, Humphreys never had any notice of the suit till the return of the mandate from the Supreme Court; never was served with process, directly or indirectly; and never authorized any one to appear for him. Under a judgment so obtained, no execution can legally issue against him.

Personal notice to the defendant is indispensable to sustain the validity of a judgment, and to authorize subsequent proceedings under it. Mayhew *v.* Thatcher, 6 Wheaton, 130; Breedlove *v.* Nicolet, 7 Pet. 434; Haydel *v.* Girod, 10 Peters, 285; Kilborn *v.* Woodnorth, 5 Johns. 41; Robinson *v.* Ward, 8 Johns. 90; Borden *v.* Fitch, 15 Johns. 143; Kinderhook *v.* Claw, 15 Johns. 538; Corliss *v.* Corliss, 8 Verm. 389; Chase *v.* Hathaway, 14 Mass. 224.

Nor is the necessity of such notice obviated by an entry of his appearance on the record, or by the appearance of attorney for him without his knowledge or authority. Starbuck *v.* Murray, 5 Wendell, 161; Holbrook *v.* Murray, 5 Wendell, 162; Shumway *v.* Stillman, 6 Wendell, 449; Aldrich *v.* Kinney, 4 Conn. 382; Bonney *v.* Baldwin, 3 Missouri, 49.

It is no answer to this to say, that the appellant, Humphreys, is precluded from alleging want of notice by the return of the deputy marshal to the summons, in the words, — "Executed this writ on B. G. Humphreys, personally, on the 14th day of October, 1839; (signed) W. M. Gwin, Marshal, per Jno. Hunter, D. M." Because, in any event, the return could only be held to be evidence, not liable to contradiction by the appellant, of such execution, service, and notice; it could only be held to be such sufficient evidence as was necessary to entitle the plaintiffs to judgment in that suit. But here the demurrer admits the fact of service and notice to be otherwise; and it is not controverted in the suit, of which alone it forms part of the record. In a different suit; for different objects; in a different tribunal.

But this return would not be evidence of notice or service

even in that suit; because it would be merely *primâ facie* evidence, and it has been disproved; because it does not appear that the execution was made according to law; and because there is no proof that the officer who executed it had legal authority to do so.

The return is only *primâ facie* proof of the fact it asserts. 7 Com. Dig. 287, *Return*, G; Jones *v.* Commer. Bank, 5 How. Miss. 43; Williams *v.* Crutcher, 5 ib. 71; Anderson *v.* Carlisle, 7 ib. 412; Patterson *v.* Denton, 1 Smedes & Marsh. Ch. 595; Boynton *v.* Willard, 10 Pick. 170; Butts *v.* Francis, 4 Conn. 424; Watson *v.* Watson, 6 Conn. 337; Waterhouse *v.* Gibson, 4 Greenl. 234. And the fact asserted in it is admitted to be untrue.

The return does not show the writ was executed by leaving a copy with the person served, which is absolutely required by law, — a defect in the return fatal to it, even as *primâ facie* evidence. How. & Hutch. Dig., p. 577, § 5, p. 583, § 27; Hutchinson's Miss. Code, p. 835, § 22; Smith *v.* Cohea, 3 How. Miss. 35, 39; Fatheree *v.* Long, 5 ib. 661; Eskridge *v.* Jones, 1 Smedes & Marsh. 596.

Nor is there any proof that the execution of the writ (if made) was by a legally constituted deputy; if not, it was absolutely void; that it was is not to be presumed in a case like this, — it must be proved. How. & Hutch. Dig., p. 292, § 6; Hutch. Miss. Code, p. 443, § 6.

IV. It has been established, then, that the appellant, Humphreys, has already legally and compulsorily paid the whole penalty of the bond, on which the judgment of the appellees is founded.

It has also been established, that the judgment so obtained does not legally authorize an execution against his property.

It has also been established, that the judgment was obtained without notice to him, and by fraud practised against him.

It is proved by the record, and admitted by the demurrer, that the appellant came to the knowledge of these facts only since the mandate transmitted from the Supreme Court to the Circuit Court; that he was guilty of no laches; that he prayed and was refused leave to plead them in the action at law; that the appellees have been decreed by the Circuit Court to be entitled to issue an execution against him; and that such execution is about so to issue.

By the settled principles of equity he is entitled, in this state of facts, to the interposition of a court of equity, and to the perpetual injunction and relief prayed for in his bill. 2 Story's Equity, §§ 887, 894; Fonblanque's Equity, 6, 2, §§ 1, 2;

Humphreys *v.* Leggett et al.

Marine Ins. Co. *v.* Hodgson, 5 Cranch, 100; 6 ib. 206; 7 ib. 332; Lansing *v.* Eddy, 1 John's Ch. 51; Simpson *v.* Hart, 1 ib. 98; Hawley *v.* Mancius, 7 ib. 182; King *v.* Baldwin, 17 Johns. 387; Blount *v.* Green, 3 Hayw. 89; Winchester *v.* Jackson, 3 ib. 305; Click *v.* Gillespie, 4 ib. 8; Goodrich *v.* Brown, 1 Chan. Cas. 49; Barnsley *v.* Powell, 1 Ves. sen. 299; Jarvis *v.* Chandler, 1 Turn. & Russ. 319; Johnson *v.* Harvey, 4 Mass. 483; Lovejoy *v.* Webber, 10 Mass. 103.

*Mr. Jones*, for the appellees.

The appellees present the following summary of the grounds upon which they hold the decree rendered in the court below irreversible.

The bill, being framed in palpable violation of the fortieth, forty-first, and forty-second rules of this court, was liable to dismission, with or without demurrer, upon motion, or demurrer, *ore tenus*, at the bar; and, being already dismissed on demurrer, should stand dismissed, whatever title to relief in equity might have arisen from its allegations, had they been brought out in an admissible and competent bill.

The reversal of the decree would, of course, be followed by a mandate to the court below, calling for an answer from the defendants; when it is plain they can put in no answer that would not come within the danger of impertinence denounced in the fortieth rule.

But, waiving all exceptions to the frame of the bill, the facts alleged in it lay no foundation for equitable interference to set aside the judgment recovered at law by the appellees.

1st. Because the appellant, from conclusive evidence of his own showing, appears to have lost the benefit of his defence, if he ever had one that was available at law, by his own fault and negligence, continued down to the time of the rendition of the judgment against him in this court (2 How. 28), and during all the residue of that term, when he might, if he could have shown any ground of defence at once available and just, have moved the court to remand the cause, with instructions to permit him to plead *de novo*, as was done in Lloyd *v.* Scott, 4 Peters, 231.

2d. Because, if the facts alleged by him were true, they lay no ground for the interference of equity to restrain the appellees from using and enforcing their judgment at law.

3d. Because he never had any available defence at law; such as he pretends being inadmissible either at law or equity.

This court has gone far to systematize the rules which should limit the interference of equity to restrain parties from

using and enforcing judgments at law, upon the ground of having failed to avail themselves of some legal defence; a branch of equity jurisprudence about which rather loose notions had prevailed, and no consistent course of procedure had been followed.

The concurrence and the clear proof of the following circumstances are held indispensable: — 1st. That the party seeking such relief really had a defence that was at once just in itself, and available at law. 2d. That he lost the advantage of it by accident, surprise, or fraud, unmixed with any fault or negligence in himself or his agents. 3d. That the circumstances of such accident, surprise, or fraud affected the opposite party so far as to make it obviously against conscience for him to use and enforce his judgment. Mar. Ins. Co. *v.* Hodgson, 7 Cranch, 336, 338; Brown *v.* Swann, 10 Pet. 504–506; Truly *v.* Wanzer, 5 How. 141.

The proximate cause of the accident by which the appellant pretends to have been ousted of his just defence is collusion between Bland, his co-obligor and co-defendant, and the sheriff; by which the sheriff undertook to make a false and fraudulent return of the alias writ of summons.

To which we answer, —

1st. That there is nothing in all this to make it against conscience for the appellees to execute their judgment: if the appellant has been wronged by this misdemeanour in office, and innocent of all privity to it, it was no less a fraud upon the appellees and upon the law; and the appellees, certainly, were no less innocent of all privity. The equities being equal, a court of equity cannot shift the burden from the one to the other; but must leave each undisturbed in his legal rights.

2d. But, in truth, the appellant was, in no sort, injured by the alleged collusion and fraud between Bland and the sheriff; every defence that the nature of the case admitted was taken, and urged with all practicable effect. As to the defence, of the loss of which alone he complains, it was no defence to that action; but belonged to the other suits on the same bond in the Circuit Court of Claiborne County. So, if the misdemeanour of the sheriff laid any foundation for relief in equity, it was against the judgments recovered in that court, not against the judgment recovered by the appellees.

3d. That the sheriff's return is absolutely conclusive on the parties to the suit; and, as between them, the truth of it cannot be drawn in question in any form of procedure at law or equity.

This is the very first case, we believe, in which it was ever

attempted by bill in equity ; but in the courts of law it has been frequently tried in every form admissible in the practice of those courts, — by way of averment in pleading, — by way of motion to set aside on affidavits of fraud and falsehood ; and the invariable answer of the English courts, from the days of Queen Elizabeth to the days of Queen Victoria, has been, that the return is conclusive between the parties to the suit, neither traversable in pleading, nor liable to contradiction by a motion to set it aside, or in any other form of procedure, but an action against the sheriff.

All the reasons that forbid any question of the truth of the return in the courts of law, equally forbid it in the courts of equity. In fact, the equitable discretion exercised by courts of law in the modern practice of motions would be quite competent to administer relief, if the case were relievable on the principles of equity.

The decisions of the courts of law are therefore conclusive against relief in the courts of equity.

The sheriff's return of *rescous* on mesne process is conclusive against the party charged, — equivalent to a conviction ; he is not put upon interrogatories, because he cannot traverse the return, and the fine is summarily imposed. Rex *v.* Elkins, 4 Burr. 2129 ; Rex *v.* Pember, Cas. Temp. Hardw. 112. So, on *sci. fa.* against terre-tenants, the return of *sci. feci.* A. B., tenant of one messuage, &c., is conclusive, and he cannot plead *non-tenure.* Flud *v.* Pennington, Cro. Eliz. 872 ; Whitrong *v.* Blaney, 2 Mod. 10 ; Barr *v.* Satchell, 2 Str. 813. Though a strong case of collusion and fraud between sheriff and defendant be made out, the return of *non est inventus* is conclusive on plaintiff. Goubot *v.* De Crouy, 3 Tyrwhitt, 906 ; S. C., 1 Cromp. & Mees. 772. See Harrington *v.* Taylor, 15 East, 378 ; Lofft's Rep. 371.

Mr. Justice GRIER delivered the opinion of the court.

The appellant, Humphreys, who was complainant below, filed his bill against the defendants, praying an injunction against the issuing of an execution on a judgment they had obtained against him at law.

His bill sets forth, that he was one of the sureties of Richard Bland, late sheriff of Claiborne County, in his official bond. That in March, 1839, the present defendants instituted a suit on the bond against Bland and his sureties, on which the Circuit Court rendered a judgment in favor of the defendants. The cause was removed to this court by writ of error, where the judgment of the Circuit Court was reversed, and the case

remanded to the Circuit Court, with directions to enter judgment against Humphreys, the surviving surety. This was in February, 1845. In the mean while, at May term, 1840, judgments were entered in the State Circuit Court of Claiborne County against the sheriff and his sureties on the same bond, and the whole amount of the penalty collected, by levy and sale of complainant's property.

The bill, moreover, avers, that complainant had no notice or knowledge whatsoever of the suit and proceedings against him by these defendants, till after the case was remanded by this court ; that the sheriff's return of service of the writ on him was false, and made at the request of Bland, for the purpose of keeping the complainant in ignorance of the pendency of the suit ; that when the cause was remanded to the Circuit Court, he offered to plead his payment of the bond *puis darrein continuance ;* but the court refused to receive the plea, on the ground, that the mandate of the Supreme Court was imperative on them to enter a judgment for the plaintiff.

The defendants demurred to this bill for want of equity, and the court below sustained the demurrer, and dismissed the bill, and the complainant has appealed to this court.

Do the facts set forth in the bill, and admitted by the demurrer, entitle the complainant to the injunction prayed for ?

According to the view entertained by the court of the true merits of this case, it will be unnecessary to examine the question so much mooted on the argument, as to the conclusiveness of the sheriff's return, or whether equity would interfere, where a false return has been made by the sheriff in collusion with a co-defendant, without any fraud or fault of the plaintiff. We shall, therefore, consider the case as if the complainant had full notice of the suit at law, and the summons had been duly served on him.

The laws of Mississippi limit the liability of the sureties in the official bond of the sheriff to the amount of the penalty. Any person injured by a default of the sheriff in paying over money collected by him may have a judgment entered on the bond for the amount due to him, on motion, without service of process, or stay of execution. This judgment is a lien on all the personal and real property of the defendants, and has a priority over all judgments subsequently obtained.

As the officer is liable to the extent of his defaults, and the surety only to the extent of the bond, difficulties will, no doubt, often occur as to the mode in which sureties may defend themselves, when judgments are demanded exceeding the amount of the penalty. If the prior judgments should be paid

out of the property of the sheriff, the sureties might wrongfully escape, if the amount of prior judgments might be pleaded against subsequent demands. On the contrary, if it could not, the surety might be compelled to pay more than the amount of his bond, unless the court should protect him in some way.

In some States, where a similar law prevails as to suits on sheriffs' bonds, each suitor is permitted to take a judgment on the bond for the amount of his claim, and when the sureties have paid in the whole amount of the penalty, all further executions are stayed by the court, and the money apportioned to the claimants according to their respective priorities. But, whatever may be the practice of the courts of Mississippi in such cases, it is clear, that, when the surety has paid the whole penalty of his bond, he should, at some stage of the proceedings, be suffered to plead this defence to further exactions. If he has had no such opportunity before judgment, the court, on motion, should permit it to be done after judgment, and order a stay of execution. Formerly, courts of law gave a remedy in such cases, by a writ of *audita querela,* — " a writ," it is said, " of a most remedial nature, and invented lest in any case there should be an oppressive defect of justice, where a party who has a good defence is too late in making it in the ordinary forms of law " ; and although it is said to be in its nature a bill in equity, yet, in modern practice, courts of law usually afford the same remedy on motion in a summary way. The practice in Mississippi seems to prefer a bill in equity for the same purpose.

And courts of equity usually grant a remedy by injunction against a judgment at law, upon the same principles. In Truly *v.* Wanzer, 5 Howard, 142, this court say, — " It may be stated as a general principle with regard to injunctions after a judgment at law, that any fact which proves it to be against conscience to execute such judgment, and of which the party could not have availed himself in a court of law, or of which he might have availed himself at law, but was prevented by fraud or accident, unmixed with any fault or negligence in himself or his agents, will authorize a court of equity to interfere by injunction to restrain the adverse party from availing himself of such judgment." (See also Story, Eq. Jur. § 887.)

In the case before us, the surety had been compelled to pay the whole amount of his bond by process from the State courts, before the present defendants obtained their judgment against him, but after the institution of their suit. This would have been a good defence to the action if pleaded *puis darrein continuance.* The complainant tendered this plea at the proper

time, and was refused the benefit of it, not because it was adjudged insufficient as a defence, but because the court considered they had no discretion to allow it. The mandate from this court was, probably, made without reference to the possible consequences that might flow from it. At all events, it operated unjustly, by precluding the complainant from an opportunity of making a just and legal defence to the action. The payment was made while the cause was pending here. The party was guilty of no laches, but lost the benefit of his defence, by an accident over which he had no control. He is, therefore, in the same condition as if the defence had arisen after judgment, which would entitle him to relief by *audita querela*, or a bill in equity for an injunction.

We are of opinion, therefore, that the complainant was entitled to the relief prayed for in his bill, and that the decree of the court below should be reversed.

### *Order.*

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the Southern District of Mississippi, and was argued by counsel. On consideration whereof, it is now here ordered, adjudged, and decreed by this court, that the decree of the said Circuit Court in this cause be, and the same is hereby, reversed, with costs, and that this cause be, and the same is hereby, remanded to the said Circuit Court, for further proceedings to be had therein, in conformity to the opinion of this court.