**J. E. ROLEN**

v.

**O. P. RAUHUFF, Jr. and Western Surety Company.**

**Civ. A. No. 6896.**

United States District Court, E. D. Tennessee, N. D.

Aug. 13, 1970.

---

Norbert J. Slovis, Lockett, Slovis & Weaver, Knoxville, Tenn., for plaintiff.

Robert B. Ray, Poore, Cox, Baker, McAuley, Ray & Byrne, Knoxville, Tenn., W. Henry Ogle, Sevierville, Tenn., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

Plaintiff, J. E. Rolen, filed this action to recover damages against defendants, Millard R. Gibson, Sheriff, Roy Gibson, Deputy Sheriff and O. P. Rauhuff, Jr., Constable, all of Sevier County, and Western Surety Company, hereafter called Western, surety on the official bonds of the Gibsons and Rauhuff. By stipulation, the case against the Gibsons was dismissed without prejudice. Motions for summary judgment by Western were denied without prejudice to renew at the conclusion of the proof on the merits. The case on the merits was tried before a jury which resulted in a verdict for plaintiff against Rauhuff in the sum of $3,000.00 compensatory damages and $500.00 punitive damages.

Subsequent to the trial, facts relating to the bond were stipulated, as follows:

"1. Western Surety Company issued its surety bond covering the performance of O. P. Rauhuff, Jr. of the duties as constable, Bond No. 41-OFF-2621 in the principal sum of $5,000 effective September 1, 1968 to September 1, 1970.

"2. On November 2, 1968 an incident occurred wherein O. P. Rauhuff, Jr. allegedly struck Alfred (Rodney) H. Gaston. On March 5, 1969 Gaston filed suit in this same court against Rauhuff and others in Civil Action No. 6566. The Gaston case was tried in this court and a verdict was entered on September 24, 1969 against Rauhuff and others totaling $40,000. Thereafter, the Gaston suit was appealed but the appeal was dismissed pursuant to a compromise agreement, by the terms of which Western Surety Company paid the face amount of its bond, $5,000, on O. P. Rauhuff, Jr. and in addition, Western Surety Company paid $12,500, the full amount of its bond, on Millard Gibson, a co-defendant, and in addition, the remaining defendants paid in compromise, the total sum of $5,000, or the total sum of $22,500 was paid in compromise of the original $40,000 judgment. Western Surety Company paid its $5,000, the amount of the Rauhuff bond, to the Clerk of this court on March 20, 1970.

"3. J. E. Rolen, the plaintiff in this case, was allegedly injured by O. P. Rauhuff, Jr. on August 16, 1969, prior to the date of the verdict in the Gaston case. Suit was filed by Rolen against Rauhuff and Western Surety Company on February 26, 1970, subsequent to the verdict in the Gaston case.

"4. Western Surety Company had not canceled its bond on Rauhuff at the time of the filing by the plaintiff Rolen of his suit and the bond has not as of the date of this stipulation been canceled.

"5. Honorable Norbert J. Slovis, Attorney, appeared as attorney for the

plaintiff throughout both the Gaston case and the Rolen case.

"6. Robert B. Ray, Attorney, appeared as attorney for Western Surety Company throughout the litigation in both the Gaston case and the Rolen case.

"7. The copy of the bond attached to the Motion for Summary Judgment filed by Western Surety Company is a true and exact copy of the bond issued by western Surety Company and presently on file in the office of the County Court Clerk of Sevier County."

Western issued its surety bond covering Rauhuff's performance of his duties as constable in the principal sum of $5,000.00 effective September 1, 1968 to September 1, 1970.

The sole question for decision is whether Western, who has admittedly paid the entire penalty of the bond to Gaston, may be required to also pay $3,500.00 to Rolen. The claims of Gaston and Rolen were separate and distinct and arose at different times under different situations.

Tenn.Code Annot. 8–1006 requires a constable to give a bond in a penalty of not less than $4,000.00 and not more than $8,000.00 before assuming the duties of the office.

Tenn.Code Annot. 8–1920 sets forth the obligations of officers under official bonds as follows:

"(1) For any breach of the condition during the time the officer continues in office or in the discharge of any of the duties of such office.

"(2) For the faithful discharge of the duties which may be required of such officer by any law passed subsequently to the execution of the bond, although no such condition is expressed therein.

"(3) For the use and benefit of every person who is injured, as well as by any wrongful act committed under color of his office as by the failure to perform, or the improper or neglectful performance, of the duties imposed by law."

Tenn.Code Annot. 8–1923 provides as follows:

"Such bonds are not discharged by a single recovery, but proceeding may, from time time, be instituted thereon by any person aggrieved, without assignment, *until the whole penalty is exhausted.*" (Emphasis added)

The foregoing statutes become a part of the bond as it was executed pursuant thereto.

We have not been furnished with any Tennessee case and have not found one by independent research passing on the identical question involved in the present case. The parties agree that the prevailing view is that a surety may not be held for more than the penalty of its bond even though multiple recoveries against the principals in official bonds may exceed the penalty.

The courts in the State of Washington do not follow the general rule. They hold that a surety is liable to all injured parties even though the full penal sum of the bond may have been previously paid. The case of Paulsell v. Peters, 9 Wash.2d 599, 115 P.2d 708 (1941), appears to be the leading case representing that view. The statute under consideration in that case was Rem.Rev.Stat. 8340–11, which provided:

"All bonds given under the provisions of this act, after their approval by the director, shall be filed in his office. Any person who may be damaged by the wrongful conversion of trust funds by such real estate broker, shall, in addition to other legal remedies, have a right of action in his own name on such bond for all damages not exceeding one thousand dollars ($1,000)."

It was pointed out that the statute had not been construed with reference to the extent of the surety's liability upon his bond where two or more claims against it exceeded in the aggregate the amount of the penalty stated in the bond. Further, the general rule is that a surety on a bond is not liable beyond the amount specified as the penalty. The Court rec-

ognized that in practically all of the states where the question had arisen that rule had been applied to cases where the aggregate of claims against the bond exceeded the amount of the penalty prescribed therein. After citing a number of cases holding that the surety could not be held liable for more than the penalty in the bond, it observed that if the majority rule were to prevail in the State of Washington the surety's contention would have to be sustained. The Court then pointed out that in cases closely analogous to the case before it, the state courts of Washington had taken a contrary view.

The leading case cited was that of Salo v. Pacific Coast Casualty Company, 95 Wash. 109, 153 P. 384, 386. That case involved an action to recover personal injuries sustained by the plaintiff when a jitney bus in which she was a passenger collided with an automobile. In the same accident four other passengers were injured and each brought separate actions for damages. In each case recovery was sought against the owner and operator of the bus and against the surety upon the bond required by Rem. Code § 5562–37 et seq., which provided as follows:

"Every person injured by any careless, negligent or unlawful act of any person, firm or corporation receiving a permit under the provisions of this act * * * shall have a cause of action against the principal and surety upon the bond provided for in the preceding section for all damages sustained and in any such action the full amount of damages sustained may be recovered against the principal, but the recovery against the surety shall be limited to the amount of the bond * * * *"

The Court held that the language of the foregoing statute gave to each person injured by reason of the negligent operation of a motor-propelled vehicle a right of action against the surety to the full extent of the bond. The Court reasoned that if the bond was exhausted by the first judgment, it would then be pos-

sible for the owner of a motor-propelled vehicle to carry passengers for hire with a bond on file in the office of the secretary of state upon which there could be no liability. Such a result, said the Court, was not intended by the Legislature.

The *Salo* case was decided in 1917 and although the Supreme Court of Washington pointed out that the decision had been severely criticized in decisions from other jurisdictions as well as annotations, nevertheless in later cases the Washington courts had consistently followed it. It further pointed out that provisions of the statute pursuant to which a bond is given are to be read into the bond and considered a part of it. Thus, it is obvious that the Court felt that it was bound by previous decisions in its holding that each person injured could recover the penalty of the bond even though the combined recoveries exceeded the penalty.

A question similar to the one under consideration was before the Supreme Court of the United States in 1850 in the case of Humphreys v. Leggitt, 50 U. S. 297, 13 L.Ed. 145. The case involved the rights of a surety on a bond that was written under the statutes of Mississippi which limited liability of sureties to the amount of the penalty. The surety sought to interpose a plea of puis darrein continuance against third parties who sought to recover judgments against the surety on the same bond. The lower court denied relief. The Supreme Court reversed, stating:

"In the case before us, the surety had been compelled to pay the whole amount of his bond by process from the State courts, before the present defendants obtained their judgment against him, but after the institution of their suit. This would have been a good defence to the action if pleaded *puis darrein continuance* * * * *" p. 313, 13 L.Ed. 145

The case of Leggitt v. Humphreys, 62 U.S. 66, 16 L.Ed. 50, was again before the Supreme Court in 1858. It reaffirmed the principle in the previous

*Leggitt* case that a surety cannot be made to pay more than the penalty of the bond.

In the case of Maryland Casualty Co. v. Alford, 111 F.2d 388 (C.A.10, 1940), the Court stated:

"Under the great weight of authority, a surety's liability is limited by the penal sum named in the bond, even though different individuals assert claims based upon distinct wrongful acts of the principal." pp. 390, 391

See: Bill Curphy Company v. Elliott et al., 207 F.2d 103 (C.A.5, 1953); Witter et al. v. Massachusetts Bonding and Ins. Co. et al., 215 Iowa 1322, 247 N.W. 831; Western Surety Company v. Childress, 372 P.2d 214 (Okl.1962); Brown v. National Surety Corporation of New York, 207 S.C. 462, 36 S.E.2d 588 (1946); Coast Surety Corporation v. White et al., 14 Cal.App.2d 35, 57 P.2d 951 (1936); Fidelity and Deposit Company of Maryland v. Sholtz, Governor, for use of Duval County, 123 Fla. 837, 168 So. 25 (1935); Albie et al. v. Jones et al., 82 Ark. 414, 102 S.W. 222.

A contract will be construed so as to impose on the surety only such obligations as clearly come within its terms. Standard Accident Insurance Company v. Knox, 144 Tex. 296, 184 S.W.2d 612.

The provision in Tenn.Code Annot. 8–1923 to the effect that officials' bonds are not discharged by a single recovery but that proceedings may from time to time be instituted by persons aggrieved until the whole penalty is exhausted shows that the intention of the Legislature, although possibly in an indirect way, was to protect the surety against liability in excess of the penalty of the bond. See: National Union Fire Insurance Company v. A. G. Winn et al., 3 Tenn.App. 60 (1925).

In determining the amount of premium to charge on a bond the surety necessarily looks to the amount of the penalty. If the surety can be held in excess of the penalty, there would be no way to determine a proper amount to charge as a premium. The surety might receive the same premium for a $5,000.00 penalty bond as a $100,000.00 or an unlimited penalty, should it be held for a sum in excess of the penalty. Such a result would violate sound business principles and provide sureties no guidelines to determine proper premium rates. This result was not the intent of the Legislature.

In reaching the conclusion that Western's motion for summary judgment must be sustained, we recognize that officers may serve when the penalties of their bonds have been exhausted and members of the public may thereby suffer wrongs without remedies. But this is a question that addresses itself to the judgment of the Legislature and not the courts.

For the reasons indicated, and upon the cases cited, Western's motion for summary judgment is sustained.