[No. 13831.  *En Banc.*  February 26, 1917.]

SIGRID SALO *et al.*, *Respondents*, v. PACIFIC COAST CASUALTY COMPANY, *Appellant.*[1]

CARRIERS—REGULATION—JITNEY BUSSES—BONDS— LIABILITY — EXTENT—STATUTES.  The surety on a jitney bus bond is liable to each person injured for the full amount of the damages, up to the extent of the penalty in the bond, under Rem. Code, § 5562-39, providing that "every person" injured shall have a right of action on the bond and that "in any such action the full amount of damages sustained may be recovered against the principal, but the recovery against the surety shall be limited to the amount of the bond;" in view of the fact that the bond is filed with the secretary of state as a condition for the issuance of a permit to run a bus for hire, and is not to be discharged by one recovery and that independent rights of action are given to each person injured (MOUNT, MORRIS, CHADWICK, and FULLERTON, JJ., dissent).

Appeal from a judgment of the superior court for King county, Gilliam, J., entered June 29, 1916, upon the verdict of a jury rendered in favor of the plaintiffs, in an action for personal injuries sustained by a passenger in a jitney bus. Affirmed.

*Geo. McKay* and *Henry S. Noon,* for appellant.
*Crowder & Crowder,* for respondents.

MAIN, J.—The purpose of this action was to recover damages for personal injuries sustained by the plaintiff, Sigrid Salo, when a jitney bus, in which she was a passenger, collided with an automobile at the intersection of 23d avenue and Union street, in the city of Seattle.  In the same accident, four other persons were injured, and each brought a separate action for the recovery of damages.  In each case, recovery was sought against the owner and operator of the jitney bus, and the surety upon the bond required under chapter 57, Laws of 1915, p. 227 (Rem. Code, § 5562-37

[1]Reported in 163 Pac. 384.

*et seq.*). In each of the five cases, the surety company filed
an answer, setting up, as an affirmative defense, the pendency
of the other four cases, stating the amount of damages
claimed in each, and alleging that the limit of liability, as
against it, was the penalty mentioned in the bond. By stip-
ulation, the five cases were tried together, but were not con-
solidated as one action. The evidence as to liability was the
same in the several causes. The surety company requested
the trial court to charge the jury that the limit of its lia-
bility was the sum of $2,500; and that the sum of the ver-
dicts, if any, in favor of the plaintiffs must not exceed this
sum as against it; and if the jury should return a verdict for
two or more of the plaintiffs, and the sum of those verdicts
should exceed the sum of $2,500, that then the $2,500 should
be distributed between the plaintiffs in whose favor the jury
found. This instruction the court declined to give, and the
jury were told that, if they found in favor of any of the
plaintiffs, the verdict must be against all of the defendants,
including the Pacific Coast Casualty Company, the surety.
In this case, the jury returned a verdict for $3,700. In the
the other four cases, the verdicts were, respectively, $100,
$1,500, $200, and $500. In the cases in which the verdicts
were $100, $1,500, and $200, the court entered a judgment
against the bonding company for the amount of each verdict.
In this case, the amount of the verdict was $3,700, and judg-
ment was entered against the bonding company for $2,500.
In the case in which the verdict was $500, a new trial was
granted. The defendant surety company appeals from the
judgment entered against it in this case, and from the judg-
ment in each of the other cases.

With the exception of the case in which a new trial was
granted, the question to be determined is the same in each
case. That question is, is the surety company liable to each
person injured, to the extent of $2,500, the amount of the
penalty in the bond, provided the verdict equals or exceeds

this sum, or is the surety company only liable to the extent of $2,500, even though the verdicts against the principal defendant should aggregate a greater sum? In other words, is the surety liable to each person injured, individually, to the extent of the amount of the penalty named in the bond; provided the verdict equals or exceeds this sum, or is the $2,500 penalty the extent of the liability, no matter how many persons may be injured, or the amount of the respective verdicts that they may recover?

Much discussion is found in the briefs over the question whether a surety can be held liable for a greater amount than the penalty named in the bond. There is a line of cases which hold that, where the action is brought upon a covenant found in the bond, and is not brought for the penalty, which at common law would have been an action of debt, the recovery may exceed the amount of the penalty. It is unnecessary to review these cases, as they are not here applicable. In this case, the action against the surety company is not upon a covenant in the bond other than the stipulated penalty. If the bond in this case does not furnish protection to each individual injured, to the extent of the penalty named, then the judgment should be reversed. On the other hand, if it was the intention of the statute, under which the bond is given, to furnish protection to each individual injured, to the extent of the penalty named in the bond, then the judgment should be affirmed. In a statutory bond, in order to determine the extent of the liability, the provisions of the act under which the bond is given are read into, and become a part of, such bond. *Snohomish County v. Ruff*, 15 Wash. 637, 47 Pac. 35, 441; *Davis v. Virges*, 39 Wash. 256, 81 Pac. 688; *Kalb-Glibert Lumber Co. v. Cram*, 60 Wash. 664, 111 Pac. 1050; *Denny-Renton Clay & Coal Co. v. National Surety Co.*, 93 Wash.103, 160 Pac. 1.

Over this proposition, there seems to be no controversy, but there is controversy touching the meaning of the statute.

It is necessary, therefore, to examine the provisions of the statute, and declare its meaning. The act is one relating to, and regulating common carriers of passengers upon public streets, roads and highways, and providing for the issuance of permits. Laws of 1915, page 227 (Rem. Code, § 5562-37 et seq.).

Section 1 (Id., § 5562-37) of the act provides that it shall be unlawful for any person, firm or corporation, other than a steam, street or interurban railway company, to engage in or carry on the business of carrying or transporting passengers for hire in any motor propelled vehicle along any public street, road or highway, within the corporate limits of any city of the first class, "without having first obtained a permit so to do as hereinafter provided: . . ."

Section 2 (Id., § 5562-38) provides that every person, firm or corporation, other than a steam, street or interurban railway company, desiring to engage in the business of carrying or transporting passengers for hire in any motor propelled vehicle over or along any public street, road or highway in any city of the first class, and every street or interurban railway or other transportation company desiring to engage in the business of transporting passengers for hire in any motor propelled vehicle except street cars,

"shall apply to the secretary of state for a permit so to do, and such applicant for each motor vehicle intended to be so operated shall deposit and keep on file with the secretary of state a bond running to the state of Washington in the penal sum of twenty-five hundred dollars . . . conditioned for the faithful compliance by the principal of said bond with the provisions of this act and to pay all damages which may be sustained by any person injured by reason of any careless, negligent or unlawful act on the part of said principal, his agents or employees in the conduct of said business or in the operation of any motor propelled vehicle used in transporting passengers for hire . . ."

This section further requires that there shall be paid to the secretary of state a fee of five dollars, and thereupon a license shall be issued to the applicant.

Section 3 provides that:

"Every person injured by any careless, negligent or unlawful act of any person, firm or corporation receiving a permit under the provisions of this act, . . . shall have a cause of action against the principal and surety upon the bond provided for in the preceding section for all damages sustained and in any such action the full amount of damages sustained may be recovered against the principal, but the recovery against the surety shall be limited to the amount of the bond . . ." Id., § 5562-39.

The controversy here is over the meaning of the excerpt quoted from § 3. It is a familiar canon of construction that, in determining the meaning of a word, clause, or sentence appearing in a statute, all the provisions of the act, so far as they may throw any light upon the construction of the particular word, clause, or sentence involved, shall be considered. In this statute, we find nothing in the preceding or the subsequent sections which would tend to show a legislative intent to give a meaning to the sentence quoted from § 3 other than the language there used would indicate. If the clause, "but the recovery against the surety shall be limited to the amount of the bond," were removed from its setting, and considered as standing alone, it may be that its proper construction would be to limit the liability upon the bond to the amount of $2,500, no matter how many persons may have been injured, or the aggregate amount of the verdicts which they had obtained. But it should be noted that this clause is the concluding part of a sentence which gives to "every person injured" a cause of action against "the principal and surety upon the bond." The use of the word "every" means individually, each, or one by one. The word "every" is used in the statute as an adjective, and in this sense it is defined in Webster's International Dictionary as meaning:

"All the parts which compose a whole collection or aggregate number, considered in their individuality; all, taken separately one by one, out of an indefinite number."

The definition given in the Century Dictionary and Cyclopedia is:

"Each, considered indefinitely as a unitary part of an aggregate; all, of a collective or aggregate number, taken one by one; any, as representing all of whom or of which the same thing is predicated."

The language of the statute to be construed, eliminating qualifications which are not here material, and stated in compact form, would read:

"Every person shall have a cause of action against the principal and the surety upon the bond, and, in any such action, the full amount of damages sustained may be recovered against the principal, but the recovery against the surety shall be limited to the amount of the bond."

By the language of the statute, read in the light of the accepted definitions of the word "every," a right of action is given to each and every person, one by one, against the principal and the surety upon the bond, and, in any "such action," the recovery against the surety shall be limited to the amount of the bond. "Such action" refers to the action previously described, that is, one which each or every person shall have, and the clause which limits the recovery against the surety to the amount of the bond is referable to the action described in the sentence which precedes this clause.

The effect of the language of the statute is to make the bond separate as to each or every individual injured. The statute does not use the words *all persons* shall have a right of action against the surety and the bond, but the recovery against the surety shall be limited to the amount of the bond. If it did so read, the contention of the appellant would, doubtless, be sustained by the language of the act.

Section 2 of the act requires that a surety bond shall be kept on file in the office of the secretary of state. There is no provision in the act requiring the filing of an additional bond when the security may be impaired. If the bond is exhausted by the first judgment against it, to the extent of

$2,500, then it would be possible for the owner of a motor-propelled vehicle to carry passengers for hire with a bond on file in the office of the secretary of state upon which there could be no liability because the penalty had already been exhausted by the previous judgment. Such a result was certainly not intended by the legislature. If the concluding clause in the sentence quoted from § 3, which is, that the recovery against the surety shall be limited to the amount of the bond, means that the penalty of the bond is exhausted by the first judgment of $2,500 against it, then what becomes of the previous part of the sentence, which gives to every person a right of action against the principal and against "the surety"? To sustain this construction, it would be necessary to make the statute read that every person shall have a right of action against the principal and the surety upon the bond, but that there shall be no right of action against the surety when there is a previous judgment against the bond to the extent of $2,500. In other words, it would impose a qualification upon the language of the statute which gives a right of action against the principal and the surety upon the bond, not found in the act. The language of the statute gives to each and every person injured, through negligence in the operation of a motor propelled vehicle, a right of action against the bond to the extent of $2,500.

The judgment will be affirmed.

ELLIS, C. J., HOLCOMB, PARKER, and WEBSTER, JJ., concur.

MOUNT, J. (dissenting)—I cannot agree to the conclusion reached by the majority in this case. I readily assent to the conclusion that, in order to determine the extent of the liability upon a statutory bond, the provisions of the act under which such bond is given may be read into, and become a part of, such bond; but in my opinion the statute does not warrant the conclusion reached by the majority. The

words "every person," as used in § 3, quoted in the majority opinion, no doubt, mean "all persons." The whole act means that "any person," or "each person," injured may have a cause of action upon the surety bond. Where an accident happens, and more than one person is injured in such accident, at the same time, "each person" and "every person" may have an independent action, but it seems clear that the limit of liability against the surety is the penalty in the bond, because the last part of § 3 provides:

"But the recovery against the surety shall be limited to the amount of the bond." Rem. Code, § 5562-39.

The word *"the,"* used in that section, clearly means the whole recovery against the surety shall be limited to the amount of the bond. The majority opinion has the effect to read into the statute the word *"each,"* in place of "the," and make the statute read:

"But *each* recovery against the surety shall be limited to the amount of the bond."

If the legislature had intended the word "the" to mean the same as the word "each," they would have used the word "each," so there could be no doubt about it. The general rule is that the penalty named in a bond is the limit of liability for a breach of the condition of the bond. This is the universal rule. Vol. 2, Sutherland, Damages (3d ed.), §§ 477, 478.

If the legislature intended to make an exception to this rule, language should have been used which would clearly and undoubtedly have expressed that intention. This act, in my opinion, does not do so. The object of this act was to provide a fund against which persons injured by carriers in cities of the first class might realize against such carriers for injuries sustained. It was commonly known that irresponsible persons were carrying passengers for hire in automobiles, in cities of the first class. This act was aimed exclusively at such carriers, and was intended to protect, to

the amount of the penalty named in the bond, citizens who were carried in such conveyances. The legislature, in order to protect the patrons of these carriers, provided that a bond, in the penal sum of twenty-five hundred dollars, should be filed with the secretary of state, for the benefit of persons injured. The statute does not limit the right of recovery against the principal, but it does limit the recovery against the surety to the penalty of the bond, because the language of the statute is:

"The recovery against the surety shall be limited to the amount of the bond."

This limitation applies for each accident. In this case, the parties were all injured in the same accident. If there had been successive injuries, upon different days, and the surety upon the bond had permitted the bond to remain on file, then it might reasonably be said that the liability of the surety would be limited to the penalty of the bond for each accident, because the surety could not be heard to say that a particular bond was exhausted by one accident, when the bond was permitted to remain on file after that accident; but that question is not presented in this case. The sole question is whether the surety is liable for more than the penalty of the bond for an accident which happens to the principal.

No case is called to our attention where a surety upon a bond is liable for more than the penalty thereof, and, in my opinion, no case can be found in the books, except this one, where such a conclusion has been reached. In my opinion, the majority has misconstrued the statute, and I therefore dissent.

Morris, J. (dissenting)—I concur in what Judge Mount has said. I have this additional objection. Surety companies are now held to the strict letter of their bond, upon the ground that they have received compensation proportionate to the risk assumed. For this reason, the modern tendency is to take from the compensated surety many of those equitable

defenses permitted to the old time surety. If the compensated surety is held to the strict letter of its bond because it has been paid for the liability which it assumes, by the same token it ought not to be held for a greater liability than that for which it has received compensation. If it is to be regarded as controlling that it has been paid for the value of its obligation, it ought to be likewise regarded that the obligation is no more than that for which payment has been made. If it is money's worth, then it should be money's worth in both cases. This surety has been compensated upon the theory that it was assuming a liability of $2,500. Upon that theory it has determined the amount to be paid for such an assumption. Now it is held that, conceding it has been paid upon the assumption that its liability was only $2,500, it may be as many times that amount as there are persons injured in any one accident. I do not think that such was intended to be the reading of this statute, the purpose of which is to create a compensated liability, but a liability no greater than the compensation demanded and received is a consideration for. This is evident from the proviso, "The recovery against the surety shall be limited to the amount of the bond." I therefore dissent.

CHADWICK and FULLERTON, JJ., concur with Judges MOUNT and MORRIS.