FIDELITY & DEPOSIT COMPANY OF MARYLAND, a Corp., v. DAVE SHOLTZ, as Governor of the State of Florida, for the Use of Duval County.

168 So. 25.
Division B.
Opinion Filed February 11, 1935.
On Rehearing September 2, 1935.
Rehearing Granted January 15, 1936.
Further Rehearing Waived March 13, 1936.

*Marks, Marks, Holt, Gray & Yates,* for Plaintiff in Error.

*Charles Cook Howell, J. C. Durrance* and *O. O. McCollum,* for Defendant in Error.

Terrell, J.—This is an action at law by defendant in error, as plaintiff below, to recover on the official bond of Frank Brown as Clerk of the Circuit Court of Duval County. The defendant was surety on said bond and the funds sought to be recovered are alleged to have been paid to Brown as Clerk of the Circuit Court and as Clerk of the Board of County Commissioners, and retained by him illegally.

This is the second appearance of this cause here. Carlton v. Fidelity & Deposit Co. of Maryland, 113 Fla. 63, 151 Sou. 291. In the latter case we held that Brown's compensation as Clerk of the Board of County Commissioners was a part of the maximum compensation allowed him under the law.

When the mandate went down in the last cited cause the defendant applied for leave to file additional pleas. This application was denied and the case went to trial on pleas numbered One and Fifteen to the amended declaration. An agreed stipulation of facts was offered in evidence which admitted the allegations of the declaration traversed by pleas One and Fifteen. The trial court then directed a verdict for the plaintiff in the sum of $4096.40. A motion in arrest of judgment and a motion for a new trial were made and denied to which the instant writ of error was prosecuted.

The record discloses these salient facts. Both the State of Florida and the County of Duval have a claim against Frank Brown, now deceased, for breach of his duty as Clerk of the Circuit Court. The bond sued on is an official

bond for faithful performance of his duty, was executed by the defendant, and is made payable to Doyle E. Carlton as Governor of the State of Florida and his successors in office. The present action was instituted in behalf of Duval County and it is shown that the State of Florida had instituted an equity suit in the same court to recover tax monies collected by and not accounted for by Brown. The limit of liability of the defendant on the bond is $5,000.00 and the amount claimed by the State is greater than this liability, as is also the amount claimed by the county.

Under such a state of facts has the State of Florida a prior right to the payment of tax monies collected and not reported from the proceeds of the bond, or should the demand of Duval County for fees collected and not reported be paid first, or should the state and county share the proceeds of the bond proportionally, it being shown that the liability on the bond is not adequate to pay the claims of both.

In Flood v. State, *ex rel.* Board County Commissioners, 100 Fla. 70, 129 So. 861, this Court held that fees collected by its officers represent the charge the state makes for services rendered by it and constitutes a fund subject to the control of the State, to be applied as the Legislature may direct. The Act involved in this case directed the disposition of all funds collected by county officers.

Under the rule of the common law, the state enjoyed the sovereign prerogative right to priority in the payment of its claims out of the proceeds of the bond of a defaulting public officer or the effects of an insolvent debtor. Where, as in this case, the claim of the State is for revenue or taxes collected we have found no exception to this rule. United States Fidelity & Guaranty Co. v. Rainey, 120 Tenn. 357, 113 S. W. 397; United States F. & G. Co. v. Bramwell,

108 Ore. 261, 217, Pac. 332; *In re* Carnegie Trust Co., 206 N. Y. 390, 99 N. E. 1096; North Carolina Corporation Commissioners v. Citizens Bank & Trust Co., 193 N. C. 513, 137 S. E. 587; 51 A. L. R. 1355; State v. Liberty Bank & Trust Co., 165 Tenn. 40, 52 S. W. (2) 150.

There have been occasional departures from this rule, as in New Jersey, South Carolina, and Mississippi, but they have generally been controlled by statute or the lack of a statute expressing a legislative intent to waive the preferential right of the state or they were cases in which a simple contract debt was involved. Fidelity & Deposit Co. of Maryland v. Brucker, 205 Ind. 275, 183 N. E. 668; 90 A. L. R. 166; Fry v. Equitable Trust Co., 264 Mich. 165, 249 N. W. 619; 90 A. L. R. 175. These cases recognize and approve the common law rule which, not having been modified by the statute, we approve as the rule in this state.

The case of United States F. & G. v. Bramwell, *supra,* recites all the cases supporting and contrary to the rule as here announced. Examination of them shows that in all the states where the question has been adjudicated, except New Jersey, South Carolina, and Mississippi, the priority of the state has been upheld, such priority being independent of statute and based on the common law.

As effecting the government of the United States the rule is different. Before such a rule can be invoked in favor of the United States it must rest exclusively on a Federal statute. United States v. State Bank of North Carolina, 31 U. S. 19, 6 Pet. (U. S.) 29, 8 L. Ed. 308.

The reason for the rule as applied to the Federal government is that there is no common law of the United States in the sense of a national customary law, distinct from the common law of England as adopted by the several states each for itself applied as its local law. Smith v. Alabama,

124 U. S. 465, 8 Sup. Ct. 564, 31 L. Ed. 508; United States Fidelity & Guaranty Co. v. Borough Bank of Brooklyn, 161 App. Div. (N. Y.) 479, 146 N. Y. S. 870.

Said the Supreme Court in Marshall v. New York, 254 U. S. 380, 41 Sup. Ct. 143, 65 L. Ed. 315, the crown of Great Britain, by virtue of a prerogative right, had priority over all subjects for the payment out of a debtor's property of all debts due it. The priority was effective alike whether the property remained in the hands of the debtor, or had, been placed in the possession of a third party, or was in *custodia legis*. The priority could be defeated or postponed only through the passing of title to the debtor's property, absolutely or by way of lien, before the sovereign sought to enforce his right.

This rule of the common law was carried into the law of this state by virtue of Section 71, Revised General Statutes of 1920, Section 87, Compiled General Laws of 1927. The policy of it was further carried in Section 3738, Revised General Statutes of 1920, Section 5610, Compiled General Laws of 1927, relating to the payment of the debts of a decedent.

Much has been said in the briefs of both parties as to its effect on this case of Lake Worth Inlet Dist. v. First Amr. Bank & Trust Co., *et al.,* 97 Fla. 174, 120 So. 316.

In that case Lake Worth Inlet District attempted to assert a preferential right to payment of a claim held by it against an insolvent bank out of the funds of said bank because of the prerogative right of the crown under the common law to be preferred over general creditors in the payment of its claim from an insolvent estate.

In the absence of statute so providing counties and municipalities do not enjoy the prerogative right of the state to priority over other creditors of the payment of its claims

against an insolvent estate. United States Fidelity & Guaranty Co. v. Rainey, *supra.* We have no such statute in this state.

Lake Worth Inlet District v. First American Bank & Trust Company, *supra,* involved the distribution of the proceeds of an insolvent bank in which the Lake Worth Inlet District was a common creditor like all others. The question of the priority of the State to be paid from the proceeds of the bank was not involved or considered. The right of a public or municipal corporation to priority was involved and we held that it must participate along with and on the same basis as other creditors. That case was not in point with and in no way controls the case at bar.

The second and only other question argued is whether or not the defendant should have been permitted to show by plea the amount of the state's claim against it for taxes collected and not accounted for by Brown as Clerk of the Circuit Court.

Since we hold that the State is entitled to priority of payment of its claim out of the proceeds of the bond and it is shown or alleged that the State's claim exceeds the penalty of the bond it would if true be a complete bar to the action for recovery by the county. It was error, therefore, to deny the defendant the right to show the amount of the State's claim, otherwise if the county enforced its claim prior to the enforcement of the State's claim the defendant would be subject to the liability of having to pay twice the penalty of the bond. If it should develop that the State's claim should not absorb all the proceeds of the bond any residue may be allocated to the payment of the county's claim.

The judgment below is accordingly reversed.

Reversed.

ELLIS, P. J., and BUFORD, J., concur.

WHITFIELD, C. J., and BROWN, J., concur in the opinion and judgment.

DAVIS, J., disqualified.

### ON PETITION FOR REHEARING

TERRELL, J.—In the main opinion filed in this cause February 11, 1935, we held that from the proceeds of the bond of Frank Brown as Clerk of the Circuit Court as between the State of Florida and Duval County, the State had a prior right to the payment of tax moneys collected and not reported over the claim of Duval County for fees collected and not reported.

It is contended· on rehearing that such an issue between the State and County was not properly presented by the record in this cause and should not, therefore, have been adjudicated. It is asserted, however, that said issue may appropriately be adjudicated in the equity suit referred to in pleas thirteen, fourteen, and sixteen tendered and refused herein by the court below. Said equity suit was brought by the State of Florida against the estate of Frank Brown for an accounting and for other relief, but Duval County nor the plaintiff in error, surety company, are made a party defendant thereto.

In further support of its position the movant, defendant in error, contends that the equity suit in no way relates to or attempts to enforce the obligation against the plaintiff in error, surety company, that the funds claimed by Duval County against Frank Brown are not the funds sought to be recovered in this action on the particular bond of Brown, that the State has made no demand against the surety of Frank Brown, and that none of the pleas tendered and denied herein aver that any claim or demand has been made on the surety of Frank Brown or admit any liability on the

part of said sureties, and that the plaintiff in error has at all times denied liability to Duval County.

While the foregoing is in the main correct it is also true that after the reversal of this cause on the former writ of error Fidelity & Deposit Company of Maryland filed a suit in chancery in Duval County in which it sought to interplead Duval County, the State of Florida, and other claimants, for the purpose of paying the penalty of its bond into court or settling the question to whom it should be paid. It is also shown that plaintiff in error sought to intervene in the equity suit filed by the State of Florida against the estate of Frank Brown for accounting and to have said equity suit consolidated with its suit to interplead, but that motions therefor in each instance were denied. It is not so apparent why said motions should not have been granted.

It is hardly reasonable to assume that the State will not present a claim against the estate of Frank Brown or the surety on his bond or that said surety will be released and required to pay nothing if defendant in error does not prevail in this litigation. The very purpose of the equity suit was to ascertain the condition of the estate of Brown and the amount of its indebtedness to the State.

The fact that the funds claimed by Duval County in this litigation are not involved with the funds that may be claimed by the State does not preclude the surety company from raising the question of priority between the two claims when it is suggested that the limit of liability on the bond is $5,000.00 and the county and State each claim more than that amount. The bond is made to the State and since the State and county claim more than the penalty named in the bond the settlement of this question is important to the surety company.

From the foregoing it will be plainly seen that the case

or the circumstances from which it arises have gotten into an unfortunate huddle and the question of the utmost importance now is the practical one of how best to unsnarl the huddle and do justice to all parties concerned.

In the main opinion we settled the general law on the question of priorities. We do not recede from the doctrine announced in that opinion but in view of the limitation of the penalty named in the bond and the fact that both State and county may have valid claims larger than such penalty it may be that part or all the claims of the county should in equity be paid prior to the claims of the State. It is possible that this question can be determined in the equity suit now pending in the Circuit Court. If it cannot it should be determined in some other proceeding. The liability of the surety company is concluded but since the State and county both lay claim to more than the penalty in the bond it is entitled to be advised to whom it should pay.

We have, therefore, concluded that the former judgment of reversal should stand but without prejudice to the surety company to interplead or institute such other appropriate pleadings as it may be advised for the purpose of determining to whom in equity the fund held by it should be paid, providing this question cannot be adjudicated in the equity suit now pending in Duval County.

Judgment of reversal modified and affirmed on rehearing.

ELLIS, C. J., and BUFORD, J., concur.

WHITFIELD, C. J., and BROWN, J., concur in the opinion and judgment.

DAVIS, J., disqualified.

ELLIS, P. J.—The controversy in this litigation has been several times before this Court in its appellate capacity. The controversy arose during the first half of the year 1930 when the County Commissioners of Duval County sought

a writ of mandamus in the Supreme Court against Frank Brown, as Clerk of the Circuit Court for Duval County, to compel him to render a sworn statement showing the expenses of his office, fees and commissions collected, and the gross and net income of the office, and to include in the statement the sum of Thirty-six hundred Dollars received by him as Clerk of the Board of County Commissioners, and to pay that sum over to the County.

A motion to dismiss the alternative writ was denied, so a motion for a peremptory writ was made. That motion was also denied and the alternative writ was quashed because, as it was said, the relators had a clear, adequate and complete remedy at law. See State, *ex rel.* Redavats, v. Brown, 100 Fla. 409, 129 South. Rep. 782.

Then in July, 1930, action at law was begun in Duval County by Governor Carlton, in his official capacity, for the use of Duval County against the Fidelity & Deposit Company of Maryland as surety upon the official bond of Mr. Brown.

Frank Brown was elected as Clerk of the Circuit Court in November, 1928, to hold office for four years, as it was alleged. He gave a bond with the defendant as surety and was duly commissioned as Clerk. The bond was in the penal sum of Five Thousand Dollars.

The declaration alleged that Brown had failed to comply with the provisions of Chapter 11954, .Laws of Florida, 1927, which was an Act to fix and determine the compensation and remuneration of all county officials. The breach of duty consisted, as it was alleged, in Brown's failure to pay into the special fund of Duval County the full amount remaining from the total gross receipts of his office after paying the reasonable expenditure allowable for salaries of clerks and assistants and for his own compensation;

that the amount which remained due and payable over to the fund was Four Thousand Eight Hundred Eighty-six Dollars and twenty-nine cents.

Ten pleas were interposed by the defendant Surety Company. The pleas denied the existence of the obligation; averred that Brown performed all the duties of the office and conformed to the conditions and covenants of the bond, and denied that he received into his possession the sums of money as alleged. The fifth plea set up that Brown was entitled to Thirty-six Hundred Dollars paid to him for salary as Clerk of the Board of County Commissioners and was not received by him as Clerk of the Court, and therefore should not be listed as money received by him in that capacity, and that exclusive of that sum he had paid over to the county all monies received by him after deducting the sums necessary for salaries and expenses and his own compensation. The eighth plea was a long argumentative, defensive statement in support of the proposition set forth more succinctly in the fifth and sixth pleas to the effect that Thirty-six Hundred Dollars of the amount claimed by the county were paid to Brown for his services as Clerk of the Board of County Commissioners.

The ninth and tenth pleas set up the averments of the eighth plea as an equitable defense, and reiterated the defense that Brown had accounted for all monies with which he was lawfully chargeable.

Demurrers were sustained to all pleas except pleas one and five which prevented the general issue of *non est factum* and the special defense that the money paid to Brown as Clerk of the County Commissioners should not be included as monies received by him as clerk of the court and the remainder of the alleged balance he had fully accounted for as the terms of the bond required.

Later in January, 1934, the court vacated its order overruling the demurrer to plea five and sustained the demurrer thereto.

Judgment had been rendered for the defendant to which a writ of error was taken and the judgment reversed for error in overruling the demurrer to the fifth plea. See Carlton v. Fidelity & Deposit Co., 113 Fla. 63, 151 South. Rep. 291. In that opinion the defense interposed by the fifth plea was fully discussed by Circuit Judge Honorable E. C. Love, who wrote the opinion for the court.

Additional pleas were then interposed by the defendant surety company numbered 11, 12, 13, 14 and 15, in which the defense was urged that it did not appear that the State of Florida had no claim against Brown as Clerk of the Court; that it was part of Brown's duty as Clerk to collect tax monies for the State and to remit the same to the State, and that such rights of the State are outstanding and undisposed of and the claims of the State "if any" do not appear to have been paid and satisfied.

The thirteenth plea set up as a defense that the State had instituted a suit against the "Florida National Bank of Jacksonville, *et al.,* in which it was alleged that Brown as Clerk had collected taxes in large sums for which he was indebted to the State; that the exact amount of the indebtedness was unknown to the complainant and that an accounting was necessary. It appears inferentially from that plea that Brown had departed this life when the bill was filed, and that funds belonging to his estate were in the hands of the Bank. The theory of the defense, as set out in the plea, was that as the claim of the State against Brown was superior in dignity to that of the county against him the action brought by the Governor as 'use plaintiff' for the county against the Surety Company should not be

maintained until Brown's liability to the State should be determined in the equity suit.

The fourteenth plea averred that Duval County was a defendant in the equitable suit mentioned in the thirteenth plea and had answered in which it had admitted that Brown was indebted to the State on account of tax monies collected by him; that the answer also averred that Brown owed the county Seventy-five Hundred Dollars. The theory of the plea was the same as that urged in the preceding plea, which was that the law action should not be maintained until the claim of the State was judicially determined in the equitable suit for an accounting.

The fifteenth plea was a denial that Brown had refused or failed to pay over the residue of the balance of the net income of his office.

Objections were interposed to the filing of the pleas which were sustained as to the plea numbered fifteen, which was allowed to stand.

In April, 1934, the defendant tendered additional plea numbered 16, which the Court denied the defendant the request to file.

The plea set up the same defense as set forth in pleas thirteen and fourteen, except that it was averred that at sundry hearings in the chancery cause it appeared that Brown's indebtedness to the State on account of the matters alleged in the bill of complaint exceeded the penalty of the bond; that the State's claim was superior to that of Duval County, so the latter's action should not be maintained.

The proposition of law involved in the pleas is that as the Governor of the State, obligee in the bond, could recover no more than the penalty of the bond, which was Five Thousand Dollars, either for the State or the County, or both, that the law action should not be maintained because

the State's claim was a superior one and in excess of the penalty of the bond.

The plea was matter of abatement arising or accruing after issue joined. It was a plea *puis darrein* continuance. See 1 Ency. Pl. and Prac. 36; Archbold's *Nisi Prius,* (16) p. 67.

The plea was defective, however, for uncertainty or lack of clarity. It was apparently contradictory in that it averred that the exact amount of the State's claim appeared in said equity cause to be "undetermined and unliquidated." In another portion of the plea it is averred that testimony had been introduced to establish the amount of the indebtedness to the State and that the "amount so shown as to the State of Florida for witness and jury fees and tax redemption fund is in excess of the penalty of this defendant's bond," but the plea does not aver that the amount of the debt has been definitely determined and decree entered against the Fidelity and Deposit Company. Indeed it does not appear that the Surety Company was a defendant in that suit.

So "stripped to the decks," the plea merely set up that because the Governor in behalf of the State in a bill for accounting against the estate of Brown and a Bank and Duval County had offered evidence to show that Brown owed the State more than Five Thousand Dollars on account of fees and taxes collected while he was Clerk of the Court, the Governor should not maintain an action for the County against Brown's surety to recover the penalty of the bond, or so much thereof as would satisfy the County's claim against him.

There was a trial and verdict for the plaintiff in the sum of $4,096.40, and judgment was entered for that sum.

There were motions for a new trial and in arrest of

judgment, both of which were denied, and the defendant took a writ of error. In due course the cause came on to be considered by this Court and in an opinion by Mr. Justice TERRELL the Court held that Brown's compensation as Clerk of the Board of County Commissioners was part of the maximum allowed him under the law. It was also definitely held that the State, in circumstances like those in this case, enjoys the "Sovereign prerogative right to priority in the payment of its claims out of the proceeds of the bond."

In the announcement of that conclusion, the argument to support which is forcefully made by Mr. Justice TERRELL, the Court unanimously agreed; Mr. Justice DAVIS, taking no part because of his disqualification.

The Court now reaffirms its views upon the two questions mentioned above. The judgment was reversed, however, because, as the opinion asserts, the defendant should have been permitted to show the amount of the State's claim "otherwise if the county enforced its claim prior to the enforcement of the State's claim the defendant would be subject to the liability of having to pay twice the penalty of the bond." In that conclusion we are persuaded that we were in error. It does not follow that because the State had a claim against Brown for public monies received by him which he had not paid over to the State, as the statute requires that the county to which Brown also was indebted on account of public funds which came into his hands could not maintain an action upon the surety bond against the surety.

The plea of the Surety Company in which it was averred that the State also had a claim against Brown which might support an action by the State upon the identical surety bond was not a plea in bar to the action by the County on

that bond to collect the amount due by Brown to the County, unless the doctrine can be established that where one of two obligees in a bond who has a superior right over the other obligee to first reduce the prior claim to judgment against the surety, the second obligee may not enforce his claim against the surety. A surety is not bound beyond the scope of his engagement. The surety's maximum liability is measured by the penalty named in the bond. When recovery is had against the surety to the full amount of the bond, he may defend himself at law against all pending or future actions. See Albie v. Jones, 82 Ark. 414, 102 S. W. Rep. 222, 12 Ann. Cas. 433; Bailey v. McAlpin, 122 Ga. 616, 50 S. E. Rep. 388.

In the McAlpin case just above cited Mr. Justice COBB, dealing with the bond given by a County Administrator points out that any person aggrieved by the conduct of the Administrator may bring suit on the bond and it is not necessary that other persons also aggrieved should be joined in the action. The learned justice points out that such actions may be carried on until the sureties have responded in a sum equal to the full penalty of the bond. "Of course," said the writer of the opinion, "When this is done the sureties will be no longer liable to any one on account of the conduct of the county administrator."

In the cases cited above the courts had under consideration bonds which were given by persons in a public or quasi-public or official capacity, and in each case the view obtained that when the penalty of the bond was exhausted the surety's liability ended. In the Arkansas case Mr. Justice McCULLOUGH was of the opinion that in case of a public official the bond was a continuing liability and the sureties were liable to the amount of the entire penalty in

every case during the entire term of office of the official. That view, however, did not obtain.

In the case at bar, however, it is immaterial which view should be taken as in either case it would not avail the surety that another person or State agency might also have a claim enforceable by action on the bond. If the surety could in any future action plead that the penalty of the bond had been exhausted he could no more complain of the present action than he could effectually complain if he were required under the law to respond to the full limit of the penalty in every case maintained against him. See also Throop on Public Officers, Sec. 294; Farrar v. U. S., 5 Pet. (U. S.) 373, 8 L. Ed. 159; 9 C. J. 131.

No question of interpleader or subrogation is involved in the case. The surety company does not admit its liability on the bond to both State and County and ask the two agencies to litigate between themselves as to which is entitled to the amount due on the bond. Nor has the surety paid to either the full amount of penalty. See Fla. East Coast Ry. Co. v. Eno, 99 Fla. 887, 128 South. Rep. 622; Ferguson v. Brogan, 111 Fla. 224, 149 South. Rep. 772.

The defendant in error petitioned the Court for a rehearing and the same was granted. The case was again considered and an opinion was filed on September 2, 1935. The Court concluding that the former judgment of reversal should stand "but without prejudice to the surety company to interplead or institute such other appropriate pleadings as it may be advised for the purpose of determining to whom in equity the fund held by it should be paid, providing this question cannot be adjudicated in the equity suit now pending in Duval County."

The defendant in error petitioned for a rehearing. The point is made that the Court had not in either of its opinions

of February 11th or September 2, 1935, considered the legal sufficiency or the propriety of the pleas numbered eleven, twelve, thirteen, fourteen and sixteen interposed by the surety company. It is contended that the application for leave to file them was not timely made, and the pleas themselves constituted no legal defense to the declaration, which was in a common law action upon a surety bond. In the latter opinion the view was expressed that the case or the circumstances from which it arose "have gotten into an unfortunate huddle and the question of the utmost importance now is the practical one of how best to unsnarl the huddle and do justice to all parties concerned."

. Upon a careful review of the entire record, the outstanding points of which are set forth above at the risk of criticism for unnecessary repetition, we reassert that the case at least had gotten into a "huddle" which was unnecessary to an expeditious and clear determination of the issues involved.

It would be a work of supererogation to place the blame for such a situation where it rightfully belongs, whether upon the lawyers for a loquacious tendency evidenced in unnecessarily lengthy documents; upon the system of pleading which permits inconsistent and contradictory pleas; upon the court for failure to exercise the power of confining the case within the limitations of the legal scope of the rights and liabilities of the parties interested, or finally the beneficent purpose of this Court to close as quickly as possible a seemingly interminable wrangle by making a practical, if not a technically correct, solution of the unnecessary complications of which possibly all four of the above enumerated weaknesses of men and institutions have been the prolific cause.

In any event, we have decided to "clean the slate" and

"begin all over" by withdrawing the mandate, granting a rehearing upon the points of law involved in the case brought here by writ of error, and in one opinion settle the law of the whole case so far as it may be done on the record before us.

Rehearing granted.

TERRELL and BUFORD, J. J., concur.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.