[No. 28323. Department One. August 1, 1941.]

OTIS PAULSELL, *Respondent,* v. FRANK E. PETERS, *Defendant,* METROPOLITAN CASUALTY INSURANCE COMPANY OF NEW YORK, *Appellant.*[1]

[1]Reported in 115 P. (2d) 708.

*Ryan, Askren & Mathewson* and *Meyer Horowitz,* for appellant.

*Stuart H. Elliott,* for respondent.

STEINERT, J.—Plaintiff brought suit against a real estate broker and his bondsman, a surety company, to recover for the misappropriation and embezzlement, by the broker, of certain sums of money alleged to belong to plaintiff. At the trial, had before the court without a jury, the defendant broker defaulted, and the cause proceeded to judgment against the defendant surety company alone. Upon entry of judgment, the surety company appealed.

The facts as shown by the record are as follows: During 1937 and 1938, defendant Frank E. Peters was engaged in the real estate brokerage business in Tacoma, Pierce county, Washington. Appellant, Metropolitan Casualty Insurance Company of New York, was surety upon Peters' real estate broker's bond in the sum of one thousand dollars, under the provisions of chapter 129, Laws of 1925, Ex. Ses., p. 218 (Rem. Rev. Stat., § 8340-1 [P. C. § 5724-1] *et seq.*).

Respondent, Otis Paulsell, owned a certain parcel of real estate in Pierce county and, on or about October 15, 1937, listed the property with Peters for sale. About a month later, Peters negotiated a written contract for the sale of the property by respondent to Norris O. Telling and wife for the sum of eleven hundred dollars, payable sixty dollars in cash and the balance in installments of fifteen dollars, or more, per month. The contract was left, unrecorded, in the possession of Peters, who was to collect the monthly installments and remit them to respondent.

Between November 15, 1937, and November 15, 1938, Peters collected installments amounting to $245, but of the total amount thus collected he remitted only $131.44 to respondent, and he has never accounted for the remaining $113.56. The unpaid balance owing by Telling and his wife on their contract with respondent amounted, in November 1938, to $928.35.

In the meantime, on November 25, 1937, Peters, in some way not altogether clear from the record, prepared or procured what purported to be an assignment transferring respondent's interest in the foregoing contract to H. E. Newfield, of Puyallup, Washington, and also procured a warranty deed of the property from respondent to Newfield. The deed was thereafter delivered to the grantee, Newfield, and was filed for record on June 20, 1938. It subsequently transpired that

respondent's signature to the assignment of the contract was forged, and that his signature to the deed, though genuine, had been procured by Peters through some fraudulent method unknown to respondent.

Newfield paid Peters five hundred dollars for the deed and assignment, and there is no contention here that Newfield's connection with the transaction was other than that of a *bona fide* purchaser. Peters, however, absconded with the money and has been a fugitive from justice ever since.

After learning from Newfield's attorney the details of the transaction involving the deed and assignment, and having discovered that Peters had absconded, respondent commenced this action against both Peters and the surety company to recover the unremitted portion of the installments which Peters had collected on the Telling contract, together with the amount which Peters had received from Newfield for the deed and assignment. The total amount thus sought to be recovered was $613.56, which, it may be noted, was less than the balance still owing on the contract between respondent and the Tellings.

Service of the complaint in this action was never made on Peters, and the litigation resolved itself into a contest between respondent and appellant surety company concerning appellant's liability on the bond.

Appellant's answer to the complaint consisted of a general denial and an affirmative defense in which appellant alleged (1) that, under the provisions of the bond, its total liability for all causes of action arising thereon was not to exceed one thousand dollars, and (2) that it had already paid out the full amount of the bond upon two judgments previously rendered against it for earlier defalcations by Peters. The trial court sustained a demurrer to the affirmative defense, and thereafter, upon the evidence adduced in support

of the complaint, entered judgment for respondent in the full amount prayed for by him.

Appellant's first contention is that the court erred in sustaining respondent's demurrer to its affirmative defense. Rem. Rev. Stat., § 8340-10 [P. C. § 5724-10], provides that any person desiring to carry on the business of real estate broker in this state shall deliver to the director of licenses a bond running to the state of Washington, in a form approved by the director, in the sum of one thousand dollars, executed by a surety company authorized to do business in this state, or by two good and sufficient sureties to be approved by the director, and guaranteeing the faithful accounting of all trust funds committed to such real estate broker.

Rem. Rev. Stat., § 8340-11 [P. C. § 5724-11], provides:

"All bonds given under the provisions of this act, after their approval by the director, shall be filed in his office. *Any person* who may be damaged by the wrongful conversion of trust funds by such real estate broker, shall, in addition to other legal remedies, have a right of action in his own name on such bond *for all damages not exceeding one thousand dollars ($1,000)."* (Italics ours.)

This court has never construed Rem. Rev. Stat., § 8340-11, with reference to the extent of the surety's liability upon a bond when two or more claims against it exceed, in the aggregate, the amount of the penalty stated therein.

The general rule is that a surety on a bond is not liable beyond the amount specified therein as the penalty. 50 C. J. 74, § 128; 21 R. C. L. 1085, § 127. In practically all of the states where the question has arisen, that rule has been applied to cases where the aggregate of claims against a bond exceeds the amount of the penalty prescribed therein.

In *Wiggins v. Pacific Indemnity Co.,* 134 Cal. App.

328, 25 P. (2d) 898, suit was brought on a real estate broker's bond given pursuant to a statute which contained provisions almost identical with those of Rem. Rev. Stat., § 8340-11, and it was there held that the aggregate recovery on the bond could not exceed the penalty thereof.

In *Coast Surety Corp. v. White,* 14 Cal. App. (2d) 35, 57 P. (2d) 951, it was held that one recovery of the full amount of a broker's bond would constitute a defense against all pending or future suits, even though such suits were based upon distinct wrongful acts of the principal.

Likewise, in *New Amsterdam Casualty Co. v. Hyde,* 148 Ore. 229, 34 P. (2d) 930, 35 P. (2d) 980, where a number of claims had been made against a surety bond, it was held that the surety was liable only to the extent of the penalty named in the bond.

See, also, to the same effect, *United States Fidelity & Guaranty Co. v. Zidell-Steinberg Co.,* 151 Ore. 538, 50 P. (2d) 584, 51 P. (2d) 687; *Witter v. Massachusetts Bonding & Ins. Co.,* 215 Iowa 1322, 247 N. W. 831, 89 A. L. R. 1065; *Fidelity & Deposit Co. v. Sholtz,* 123 Fla. 837, 168 So. 25; *Southern Surety Co. v. Bender,* 41 Ohio App. 541, 180 N. E. 198; Notes L. R. A. 1917D, 617; (1934) 89 A. L. R. 1071.

If the rule as declared in the foregoing authorities were held to obtain in this state, appellant's initial contention necessarily would have to be sustained. This court has, however, in cases closely analogous to the case at bar, definitely taken a contrary view.

In *Salo v. Pacific Coast Casualty Co.,* 95 Wash. 109, 163 Pac. 384, L. R. A. 1917D, 613, the plaintiff brought an action to recover damages for personal injuries sustained by her when a jitney bus in which she was a passenger collided with an automobile. In the same accident, four other passengers were injured, and each

brought a separate action for damages. In each case, recovery was sought against the owner and operator of the bus and against the surety upon the bond required by chapter 57, Laws of 1915, p. 227 [Rem. Code, § 5562-37 *et seq.*]. Section 3 of that act, p. 228 (which has since been amended [chapter 27, Laws of 1929, p. 27], the changed wording now being found in Rem. Rev. Stat., § 6384 [P. C. § 237]), provided:

"Every person injured by any careless, negligent or unlawful act of any person, firm or corporation receiving a permit under the provisions of this act . . . shall have a cause of action against the principal and surety upon the bond provided for in the preceding section for all damages sustained and in any such action the full amount of damages sustained may be recovered against the principal, *but the recovery against the surety shall be limited to the amount of the bond.* . . ." (Italics ours.)

In each of the five cases arising out of that accident, the surety company filed an answer setting up as an affirmative defense the pendency of the four other actions, stating the amount of damages claimed in each, and alleging that the limit of liability, as against it, was the amount of the penalty provided in the bond.

By stipulation, the five cases were tried together, but were not consolidated as one action. The evidence as to liability was the same in the several causes. The surety company requested the trial court to charge the jury that the limit of its liability was the sum of twenty-five hundred dollars, which was the amount of the penalty fixed by the bond, and that if the jury should return verdicts for two or more of the plaintiffs, and if the sum of such verdicts should exceed twenty-five hundred dollars, then the latter named amount should be distributed between, or among, the plaintiffs in whose favor the jury found.

The trial court refused to give the requested instruc-

tion, and the jury subsequently returned five verdicts aggregating six thousand dollars, of which the verdict in favor of the plaintiff Salo was in the sum of thirty-seven hundred dollars. Judgment was entered for Mrs. Salo in the sum of twenty-five hundred dollars, which was the limit of the penalty fixed by the bond, and for the other plaintiffs in lesser amounts as found by the jury.

Upon appeal by the surety company from that judgment, this court held, in a five to four decision, that the language of the statute above quoted gave to each and every person injured by reason of the negligent operation of a motor-propelled vehicle a right of action against the surety *to the full extent of the bond.*

It will be observed that the court arrived at that conclusion despite the fact that the statute specifically provided that recovery against the surety should be limited to the amount of the bond. The reasoning upon which this court based its conclusion was expressed, in part, as follows:

"If the bond is exhausted by the first judgment against it, to the extent of $2,500, then it would be possible for the owner of a motor-propelled vehicle to carry passengers for hire with a bond on file in the office of the secretary of state upon which there could be no liability because the penalty had already been exhausted by the previous judgment. Such a result was certainly not intended by the legislature."

The *Salo* case was decided in 1917, and since then has been severely criticized in some of the decisions from other jurisdictions previously cited herein, as well as in the annotations referred to above. Nevertheless, this court has, in later cases, consistently followed the *Salo* decision.

In *Nelson v. Pacific Coast Casualty Co.*, 96 Wash. 43, 164 Pac. 594, one of the four actions considered in connection with the *Salo* case, *supra,* had been retried,

and, upon appeal by the surety company, the same contention was made with respect to the extent of liability upon the bond as was made in the original case. The *Salo* decision was upheld, and upon the authority of that case the judgment in favor of Nelson was affirmed. It may be noted that the final judgment in the *Nelson* case increased the total amount of liability of the surety company from six thousand dollars to seven thousand dollars, or forty-five hundred dollars in excess of the amount specified in the bond.

In *Commercial State Bank v. Palmerton-Moore Grain Co.,* 152 Wash. 89, 277 Pac. 389, suit was brought against a warehouse company and the surety upon its statutory bond, to recover for the failure of the warehouseman to redeliver certain wheat which it had received from the plaintiff for storage. The bond in that case was given pursuant to Laws of 1919, chapter 189, pp. 591, 598, §§ 5, 18 (Rem. Comp. Stat., §§ 6982, 6996, now modified in Rem. Rev. Stat. (Sup.), §§ 6996-1, 6996 [P. C. §§ 2659, 2641-102], Laws of 1933, p. 815, § 1; Laws of 1937, p. 369, § 2). The first of those two sections then provided:

"All bonds provided for by this act shall be filed in the office of the secretary of state of Washington, and any person injured . . . by reason of neglect or failure of such . . . warehouseman to comply with the provisions of this act or of the rules and regulations of the [public service] commission shall have a right of action upon such bond for the recovery of all damages suffered thereby."

One of the affirmative defenses interposed by the defendant surety in that case was that the total amount of the demands made against it by the plaintiff and other claimants was in excess of the penalty of the bond, and the defendant therefore asked that the amount of its liability on the bond be determined, and, if found to be in excess of the penal amount, that the latter

amount be apportioned according to the respective rights of the parties entitled thereto. The trial court sustained a demurrer to that defense. On appeal, the decision upon that question was rested squarely on the *Salo* case, *supra,* and the judgment was affirmed.

It may be noted, as was pointed out in the opinion in the *Commercial State Bank* case, *supra,* that, whereas the statute governing the *Salo* case provided that *"every* person" injured should have a right of action, the statute involved in the later case provided that *"any* person" injured should have such right. However, it was held, in the *Commercial State Bank* case, that the one phrase had as broad a meaning as the other. It may be noted, further, that the clause "but the recovery against the surety shall be limited to the amount of the bond," found in the jitney bus act, was absent from the warehouse act. In this connection, we call attention to the fact that the warehouse statute has since been amended in respect to the matter here involved. The effect of that amendment will be referred to later herein.

In the case at bar, the analogous statute, Rem. Rev. Stat., § 8340-11, follows quite closely the pattern of the warehouse act as it originally read. It uses the words "any person" instead of the words "every person," and it not only omits any provision indicating that total recovery against the surety is to be limited to the amount of the bond, but also provides, affirmatively, that "any person" damaged by the wrongful conversion of trust funds shall have a right of action on the bond *for all damages* not exceeding one thousand dollars.

The reasoning upon which the decision in the *Commercial State Bank* case, *supra,* rested was expressed in the opinion as follows:

"The legislature, in enacting the later law [the warehouse act], is presumed to be informed of previous legislation [the jitney bus act] and the construction which has been given to it [in the *Salo* case, *supra*] by the courts. 2 Lewis' Sutherland Statutory Construction (2d ed.) § 499.

"There is every reason why a warehouse bond should receive the same construction as a jitney bond, and therefore there was no error in the rulings of which we have just treated."

The real estate brokers act (Chapter 129, Laws of 1925, Ex. Ses., p. 218 [Rem. Rev. Stat., § 8340-1 *et seq.*]) was passed long after the decision in the *Salo* case, rendered in 1917, and it is to be presumed that, in passing the 1925 act here in question, the legislature was informed of previous similar legislation, such as the jitney bus act, and of the construction given by this court to that act. Since then, in 1929, the *Commercial State Bank* case has been decided, placing the same construction on the warehouse act of 1919.

Many sessions of the legislature have been held since the adoption of the real estate brokers act, and no amendment thereof has been made. It is therefore to be presumed that the legislature not only intended that the act should be given the same construction as was given to the earlier and closely analogous jitney bus statute, but also that it has approved the similar construction given in the meantime to the subsequently enacted warehouse act which also parallels the real estate brokers act. Crawford, Statutory Construction (1940), § 224.

After the decision in the *Commercial State Bank* case, *supra,* the legislature at its very next session amended the warehouse act by incorporating a proviso to the effect that the liability of the surety upon the bond required by the statute shall be limited to the amount specified in the bond; that in case of recoveries

by two or more persons in excess of the amount of the bond such recoveries shall be prorated; and that the total recovery against the surety shall not exceed the amount of the bond. Laws of 1931, chapter 46, p. 148, § 1 (Rem. Rev. Stat., § 6982 [P. C. § 2646]). It is significant that the jitney bus act and the real estate brokers act were not similarly amended. The amendment of only one of the three similar statutes clearly indicates a legislative intention that the two unamended acts should continue to be construed as they previously had been by this court.

While we appreciate the force of appellant's argument upon the point here involved, and recognize that the rule adopted in this state has been criticized sharply in other states, the question here under discussion falls within the rule which has been accepted and repeatedly declared in this jurisdiction, and has therefore been set at rest. Paraphrasing the language used in the *Salo* case, *supra,* we take the view that it certainly was not the intention of the legislature to permit the bond of a real estate broker to be exhausted by one or more judgments against it and thus to make it possible for such broker to transact business with a bond on file upon which there could be no liability because the penalty had already been completely exhausted.

We therefore conclude that the construction to be placed upon Rem. Rev. Stat., § 8340-11, is that any person who has been damaged by the wrongful conversion of trust funds by a real estate broker has a right of action upon the bond for all damages to the full extent of the bond.

Appellant contends further in this connection, however, that the case at bar is to be distinguished from our former decisions, above analyzed, for the

reason that the bond itself, in this instance, contains a provision which reads:

"Provided, That the total liability hereunto for all causes of action arising during the period for which this bond is written shall not exceed the total sum of One Thousand Dollars."

Relying again upon the general rule that a surety on a bond is not liable beyond the penalty provided therein, appellant urges strenuously that, if a surety company, upon entering into such contract, could not at that time determine the extent of its liability, it would put an end to suretyship.

We apprehend the difficulties and hazards which a surety may incur in assuming such obligations. However, it must be remembered that the bond in this case is a statutory bond. The statute in question requires that a bond in the sum of one thousand dollars be delivered to the director of licenses, and that any person damaged by certain wrongful acts of a real estate broker shall have a right of action on such bond *for all damages* not exceeding that amount. The statute, as we have hereinbefore interpreted it, thus fixes the amount that may be recovered in any one instance.

The rule is well settled in this state that the provisions of the statute pursuant to which a bond is given are to be read into the bond and considered a part of it, and that such conditions in the bond as are repugnant to the statute are to be treated as surplusage. *State ex rel. Tollefson v. Novak,* 7 Wn. (2d) 544, 110 P. (2d) 636, and cases therein cited. See, also, 8 Am. Jur. 708, 709, Bonds, § 4; 11 C. J. S. 418, 420, Bonds, §§ 39, 40 (e).

In *Salo v. Pacific Coast Casualty Co.,* 95 Wash. 109, 163 Pac. 384, to which we have already devoted considerable attention, it was said:

"In a statutory bond, in order to determine the extent of the liability, the provisions of the act under which the bond is given are read into, and become a part of, such bond."

Under that rule, the provision of the statute, as we have hereinbefore construed it, with reference to the extent of the liability of the surety, is to be read into the bond and considered a part of it. When the bond is so read, it gives to each person who has been damaged by the wrongful conversion of trust funds by a real estate broker a right of action on the bond for all damages not exceeding the sum of one thousand dollars.

Appellant's second main contention is that

"The court erred in holding that respondent could ratify the unlawful, unauthorized and voidable act of his agent [Peters] to the detriment of appellant, when the failure to ratify such act would not result in any loss to respondent."

The argument upon this contention is that

"When respondent learned of the assignment and delivery of the deed to Newfield, he [respondent] was legally entitled to refuse to recognize the transaction and thus suffer no loss. Having suffered no loss, he could not then ratify the act of Peters to the detriment of appellant."

In support of that argument, appellant invokes certain generally accepted principles of the law of suretyship to the effect that, if a creditor has a surety for a debt, and at the same time has in his possession property of the principal, or has a lien on property of the principal, as an additional security for the debt, and if the creditor thereafter releases the property, relinquishes the lien, or impairs the primary security, the surety is thereupon discharged from liability to the extent of the value of the property, lien, or security thus released, relinquished, or impaired. *State v.*

*Hartford Accident & Indemnity* Co., 140 Wash. 278, 248 Pac. 432; *State v. Maryland Casualty Co.,* 140 Wash. 701, 248 Pac. 434; 1 Brandt, Suretyship & Guaranty (3d ed., 1905), § 480; Stearns, Law of Suretyship (Feinsinger's ed. 1934), § 98; accord, *Maryland Casualty Co. v. Grays Harbor County,* 159 Wash. 356, 368, 293 Pac. 441, 445; *Douglass v. Thurston County,* 86 F. (2d) 899, 906.

■ There is a two-fold answer to appellant's argument. In the first place, if we concede that respondent may have been "entitled" to refuse recognition of the Newfield transaction, it does not follow that he was under any *legal obligation* to pursue that course. He had the right to elect to ratify the act of Peters, who was operating within the apparent scope of his authority, and, upon such ratification, to bring suit for recovery of the amount due him, respondent, by reason of that act. This action was instituted against Peters, as well as against appellant, upon the theory that title to the property had passed to Newfield by virtue of the deed which respondent himself had executed, even though it had been procured from him through fraud on the part of Peters. Respondent was not required, in law, to disaffirm the act of Peters, although he may have been "entitled" to do so.

■ In the second place, it cannot be said, under the circumstances shown by this record, that respondent would have been entitled to repudiate the transaction between Peters and Newfield. The deed bore respondent's signature, and on its face indicated that it had been properly executed. Newfield was a bona fide purchaser for value.

When a loss must be borne by one of two innocent persons, it must fall upon the one who made the loss possible. By his own acts, though innocent and unintentional, respondent put it in the power of Peters to

convey title to Newfield. Respondent therefore could not reclaim title and thereby shift the loss to Newfield, who was not only an innocent party, but also one whose acts had in no way contributed to the loss.

Furthermore, even though respondent might ultimately have prevailed in a suit brought by him against Newfield to set aside the deed, that course would have entailed expensive litigation, with dubious assurance of success, and with the risk that failure would be further complicated by the chance that such suit would constitute an election of remedies. Respondent apparently considered the prospects, for it is in the record that conferences were had between his attorney and Newfield's legal adviser, and respondent evidently was convinced, as we think he should have been, that a lawsuit of that kind would avail him nothing but trouble and useless expense. We are of the view that respondent was entitled to take the course that he did.

Appellant's final contention is that the five hundred dollars which Peters obtained from Newfield, through forgery of respondent's name to the assignment of the contract and through the delivery of the deed to Newfield, did not constitute a trust fund within the meaning of Rem. Rev. Stat., § 8340-11. That section, it will be recalled, provides that any person who may be damaged by the wrongful conversion of trust funds by a real estate broker shall have a right of action on the broker's bond for all damages not exceeding one thousand dollars.

Appellant concedes that the installments collected on the original contract with the Tellings constituted trust funds. It contends, however, that the five hundred dollars obtained by Peters on delivery of the deed to Newfield did not constitute a trust fund, for the reason that Peters was never authorized to negotiate

that transaction. We cannot agree with that contention.

Although the transaction was unauthorized, so far as Peters was concerned, it was valid as between respondent and Newfield, under the circumstances and conditions to which we have already referred. Moreover, as previously stated, the transaction was subsequently ratified by respondent. The money which Newfield paid was not only intended for the true owner of the property, namely, the respondent, but belonged to him in law. In other words, Peters received money which belonged to respondent and which he, as agent, was obligated to remit to his principal. It therefore constituted a trust fund. The fact that Peters absconded with the money did not change its legal character. Peters having thus failed to account for trust funds, respondent was entitled to sue upon the bond required by the statute.

The judgment is affirmed.

ROBINSON, C. J., BLAKE, MAIN, and DRIVER, JJ., concur.